UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 10-60021-CIV-COHN/SELTZER

ALL UNDERWRITERS SUBSCRIBING
TO INSURANCE POLICY NUMBER
YS40000L2005, INCLUDING UNDERWRITERS
AT LLOYDS, LONDON,

      Plaintiffs,

vs.

TENACIOUS LTD,
 A MARSHALL ISLANDS COMPANY,

      Defendant,

_____/

### FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

COME NOW the Plaintiffs, ALL UNDERWRITERS SUBSCRIBING TO INSURANCE POLICY YS40000L2005, INCLUDING UNDERWRITERS AT LLOYDS, LONDON, (hereinafter "UNDERWRITERS"), by and through their undersigned attorneys, and file this First Amended Complaint for Declaratory Relief against Defendant TENACIOUS, LTD, asking this Court to find and declare the facts of this matter, and the consequent rights, duties and obligations of UNDERWRITERS and TENACIOUS, LTD as a result thereof and, in support, allege as follows:

1.    This Court has subject matter jurisdiction over this matter pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, for the purpose of determining the question and actual present controversy existing between the parties.

2.      This Court has subject matter jurisdiction over this matter under the Admiralty and Maritime Jurisdiction of the United States District Court, 28 U.S.C. §1333. Specifically, this action concerns a policy of marine hull and machinery insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction.

3.      This is an action for declaratory relief within the admiralty and maritime jurisdiction of the United States District Court and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules governing admiralty and maritime claims.

4.      UNDERWRITERS subscribed to this policy on behalf of various syndicates at Lloyds, London, and insurance companies in the London Market and have their principal place of business in London, England, United Kingdom.

5.      TENACIOUS, LTD was, at the time of policy issuance, incorporated in the British Virgin Islands but at the time of the incident which forms the subject matter of this litigation and, at all times material hereto, was and is a Marshall Islands company. On information and belief, the principal place of business of TENACIOUS, LTD is Hamilton, Bermuda.

6.      TENACIOUS, LTD engaged and retained their agent, Atlass Insurance Group, of Fort Lauderdale, Florida, to obtain hull and machinery insurance coverage for their vessel TENACIOUS, a 115 foot cutter rigged sailing vessel built by Trident in 1994.

7.      Atlass Insurance Group, in turn, in their capacity as agent and broker for TENACIOUS, LTD, retained Marsh Ltd, Southampton, England, as the agent and

Lloyds broker for TENACIOUS, LTD to obtain hull and machinery coverage for the vessel in the London Market.

8.      Subsequently thereto, Ropner Insurance Services Limited became the agent and Lloyds broker for TENACIOUS, LTD for the purpose of representing their marine insurance interests in the London Market.

9.      At all times material hereto, Atlass Insurance Group, Marsh Ltd and Ropner Insurance Services Limited were acting as the agent of and broker for TENACIOUS, LTD.

10.     At all times material hereto, TENACIOUS, LTD., a foreign corporation, marketed the vessel TENACIOUS, a 1994, 115' cutter rigged sailing vessel built by Trident, for charter hire by and through its agent and charter broker, FRASER YACHTS WORLDWIDE in Fort Lauderdale, Florida.

11.     At all times material here, TENACIOUS, LTD., operated, conducted, engaged in, or carried on a business or business venture in the state of Florida by and through its charter broker, FRASER YACHTS in Fort Lauderdale, Florida.

12.     UNDERWRITERS subscribed to a policy of marine insurance, Number YS40000L2005, providing hull and machinery insurance coverage for TENACIOUS, a 1994, 115' cutter rigged sailing vessel built by Trident for the twelve month period beginning September 7, 2006.  A copy of the applicable Cover Note, Endorsement and Insurance Agreement (hereinafter the "Policy") are attached hereto and made a part hereof as Composite Exhibit "A".

13.    The relevant portion of the Policy insured the vessel TENACIOUS for a total of Five Million Two Hundred Fifty Thousand and No/100 Dollars ($5,250,000.00). The Policy is subject to a deductible of $52,500.00 for property damage claims.

14.    Defendant, TENACIOUS, LTD, is the named insured under the subject marine insurance Policy (hereinafter also referred to as the "Insured").

15.    As set forth in Composite Exhibit "A" in more detail, Section A of the Policy "Obligations Arising Out Of This Insurance" provides, in pertinent part, as follows:

### 1. *Warranty of Seaworthiness*

It is *Warranted* by *You* that the *Yacht* shall be maintained in a seaworthy condition at all times. In the event of a loss or damage affecting the seaworthiness of the *Yacht*, the *Yacht* shall be restored to a seaworthy condition as soon as reasonably possible and the *Yacht* will not be operated pending completion of such repair without *Our* express written approval….

### 3. Concealment or misrepresentation

It is *Your* duty to keep *Us* advised of any material fact or circumstances relating to this insurance and the interests insured. We do not provide coverage for any *Insured Person* who has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance.

16.    As set forth in Composite Exhibit "A" in more detail, Section C of the Policy "Conditions In The Event of Loss Applicable To All Sections Of This Policy" provides, in pertinent part, as follows:

### 2. *Protect and recover*

*You* must take all reasonable steps promptly to protect the *Insured Property* from further loss. *We* will pay the reasonable expenses incurred by *You* in doing this…

### 4.  *Preserve Our Rights*

> *You* must assume no obligation, admit no liability nor incur any expenses for which *We* are or may become liable without *Our* written permission except any expenses incurred to protect the *Insured Property* from further loss.

17.    As set forth in Composite Exhibit "A" in more detail, Section 1 of the Policy "Property Damage To The Yacht" provides, in pertinent part, as follows:

**Coverage**

1.    *We* will provide coverage against accidental direct physical loss or damage to *Your Yacht* except as specifically excluded herein….

**Exclusions**

3.    *We* do not provide *Property Damage* coverage against or resulting from:

a)    Wear and tear, gradual deterioration, weathering, insect, mould, animal or marine life;

b)    Osmosis, blistering or electrolysis…

d)    Loss or damage caused directly or indirectly by or in consequence of the willful or intentional act or omission of the or an *Insured Person*;

e)    Failure of the or an *Insured Person* to maintain the *Yacht* in a seaworthy condition…

**Repairs**

8. *We* will pay for the necessary and reasonable cost to repair *Your Yacht* as a result of any covered damage with no deductible for depreciation.

The cost of repairs shall be determined by yacht repair yards, equipment repairers or surveyors approved by *Us*.

## **Background Facts**

18.     On or about Wednesday, December 27, 2006, the vessel TENACIOUS was anchored to a sandy bottom in approximately 20 feet of water off Bell Island, Exumas, Bahamas, with only 60 feet of chain being used to anchor the vessel.  At approximately 5:50 AM on December 27th, after the wind shifted, the anchor dragged and the vessel went hard aground at low tide on a rocky bottom.

19.     Subsequently, the vessel was able to free herself about four hours later on a rising tide.  An inspection of the damage to the composite hull by the Captain and Engineer reportedly revealed "a great deal of scraping on the hull on the port side."  The base of the rudder was found to be significantly damaged over an area approximately three feet in size where a rock had severely abraded and pierced the exterior fiberglass laminate of the rudder through to the Kevlar matting and foam core material in several places.

20.     In addition to extensive scraping damage along the side of the hull, other areas of the bottom of the composite hull along the centerline were more extensively damaged and abraded with at least one area punctured through the exterior laminate to the Kevlar matting and foam core material.  Another area showed significant damage to the exterior laminate but did not go through to the Kevlar matting.  At that time, the Captain and Engineer inspected, operated and tested both center boards and found and reported them both to be functional and undamaged.

21.     In light of the nature and extent of the damage to the composite material of the rudder and hull, and its potential impact on the seaworthiness of TENACIOUS, the Captain decided not to operate the vessel until temporary repairs were affected. The vessel was moved to nearby Sampson Cay for repairs.

22.     Subsequently, on Thursday and Friday, December 28th and 29th, Overseas Salvage & Maintenance made temporary repairs to the damage while the vessel remained afloat.  Delamination between the exterior hull laminate and interior core was severe enough in some places that fingers could be inserted between the exterior laminate and the composite interior hull material. Overseas Salvage & Maintenance straightened a bent rudder skeg plate and used underwater epoxy to seal the damaged laminate to prevent further water intrusion at a cost of $3,537.50.

23.     On Tuesday, January 2, 2007, Marcus Mitchell, of Overseas Salvage, an accredited marine surveyor, reported that the temporary repairs had been completed and were sufficient for TENACIOUS to be seaworthy for a voyage from Sampson Cay to Freeport, Bahamas for further repairs.

24.     On January 2, 2007, the Captain of TENACIOUS provided his preliminary written report on the grounding incident by electronic mail to Atlass Insurance Group. The captain also advised Atlass Insurance Group that it was his intention to take the vessel to Freeport, Grand Bahama, to haul the vessel out of the water, to inspect and survey the hull and rudder, to increase the patching, to have a composite expert oversee the work and to have a marine surveyor inspect the final patch. The Captain's report was forwarded by electronic mail on the evening of the same day by Atlass Insurance Group to the London Broker of TENACIOUS, LTD, then Marsh Limited, who received it the following morning, January 3, 2007 in London.

25.     On Friday, January 5, 2007, Atlass Insurance Group contacted Marsh Limited by telephone and advised Marsh that the vessel would proceed to the Rybovich yard in Palm Beach as the vessel could not be properly hauled in Freeport.

26.    Marsh Limited then contacted the Lead Underwriter and advised them of the situation.  Marsh Limited then advised Atlass Insurance Group of Lead Underwriters' advice by telephone and electronic mail on January 5, 2007 as follows in pertinent part:

> "…<u>at this time</u>, they do not wish to have one of their attending surveyors contact the skipper and have simply advised that there is a warranty of seaworthiness under the policy and if the insured is comfortable with the situation-i.e. temporary repairs and continuing to use the vessel, so is the Underwriter.
>
> As we have explained to the Insured, <u>they are required to act as a prudent uninsured and make sure that all reasonable steps are taken to ensure the seaworthiness of the vessel.</u>
>
> I await further developments <u>along with the details of the permanent repair costs once the vessel arrives in Palm Beach</u> in order to ascertain whether a claim will result given the Hull deductible of USD52,500.00. I also look forward to receiving the missing preliminary report. I would also confirm that the policy provides cover for inspection, for which the Insured may wish to claim; (Emphasis added)
>
> "***We*** will pay the reasonable cost of inspecting the bottom of the ***Yacht*** after grounding, even if no damage be found without application of any deductible."

27.    At all times material hereto, UNDERWRITERS limited their authorization to operate the vessel with only temporary repairs in place to the voyage from the Bahamas to Palm Beach.

28.    At all times material hereto, UNDERWRITERS expected and required the Insured to comply with the terms and conditions of the Policy by restoring the yacht to a seaworthy condition as soon as reasonably possible by affecting permanent repairs; to act as a prudent uninsured would act to protect the Yacht from further loss by promptly affecting permanent repairs; to promptly notify Underwriters of the details, costs and completion of permanent repairs after the Yacht was hauled and inspected in Palm

Beach; and to obtain the express, written permission of UNDERWRITERS if the yacht resumed normal operations without affecting permanent repairs.

29.     At all times material hereto, UNDERWRITERS expected the Insured to comply with the terms and conditions of the Policy by notifying UNDERWRITERS of the Insured's intent to commence permanent repairs and to obtain approval by UNDERWRITERS of the repair yard, surveyor and estimated cost of repairs.

30.     TENACIOUS arrived at the Rybovich yard in Palm Beach on Sunday, January 7, 2007 and was hauled for repair on Monday, January 8, 2007.

31.     Repairs to the hull and rudder damage were completed in one day, January 8th, at a total cost of $12,506.59, and TENACIOUS was re-launched and departed on Tuesday, January 9th.

32.     On information and belief, the repairs conducted at Rybovich simply consisted merely of grinding out the damaged areas "as best as possible," drying out the damaged areas "as best as possible'" and filling in the damaged areas with repair fillers and resin as needed before grinding the areas smooth and touching up the bottom paint.  On information and belief, the underwater epoxy placed over the damage by Overseas Maintenance & Repair was not removed but simply smoothed over and sealed by additional filler.

33.     On information and belief, Rybovich was instructed by the Insured not to attempt permanent repairs but to affect only limited, further temporary repairs and was further instructed by the Insured to complete said temporary repairs in only one day. This was because the Insured had charter obligations for the Yacht to fulfill and the

Insured did not want to take the time necessary to make permanent repairs which would cause the Yacht to be late for and/or miss charter commitments.

34.     Subsequently, referring to the repair effort at Rybovich, the Insured's own expert has opined that "there is no way the damaged areas, crushed and delaminated composite hull and core of the hull could have been properly dried out over such a short period of time."

35.     The Insured's own expert has further opined that the actual extent of the hull damage suffered as a result of the grounding was unknown when the  temporary repairs were made at Rybovich and actually extended far beyond the readily obvious damage.

36.     On information and belief, the extent of the damage to the hull and rudder was not thoroughly inspected and surveyed prior to repair, the work done to repair the hull damage was not overseen by a composite expert nor was the final repair inspected by a marine surveyor as represented to UNDERWRITERS by the Captain.

37.     The Repair Invoice prepared by Rybovich for the repairs done to TENACIOUS on January 8, 2007 states as follows:

"This repair is performed as a temporary repair and holds no warranty or guarantee for any performance of bonding to existing structure."

38.     Despite the fact that no permanent repairs had been affected and that Rybovich had refused to warranty or guarantee the adequacy of their temporary repairs, TENACIOUS resumed normal operations.

39.     No claim was made in January 2007 to UNDERWRITERS for the cost of the hauling or for the cost of the temporary repairs.

40.     No information was provided in January 2007 to UNDERWRITERS with regard to any cost or plans for permanent repairs.

41.     No permission, written or otherwise, was sought by the Insured nor received from UNDERWRITERS in January 2007 to allow TENACIOUS, LTD to continue to operate the vessel with only temporary repairs after the Yacht was hauled at Rybovich.

42.     No information was provided by the Insured to UNDERWRITERS in January 2007 advising them that no permanent repairs had been completed and that the Yacht was continuing to operate with only temporary repairs.

43.     On information and belief, TENACIOUS was underway and operated extensively for the next 18 weeks with only the temporary repairs in place.

44.     On information and belief, the center boards of TENACIOUS operated throughout that 18 week period without any difficulty or indication of any damage to them as a result of the grounding.

45.     On or about May 11, 2007, the Insured caused TENACIOUS to arrive at Thunderbolt Marine in Savannah, Georgia, for the purpose of undergoing a period of refit and repair, including permanent repairs to the damage to the composite hull and rudder resulting from the subject grounding.

46.     Due to the nature and extent of the damage suffered by the composite hull and rudder as a result of the grounding, the Insured retained two experts in composites to prepare a repair specification and carry out the repairs to the hull and rudder. However, contrary to the terms and conditions of the policy and the instructions previously given, the insured neither notified UNDERWRITERS of the details of the

permanent repairs nor sought approval by UNDERWRITERS of the repair yard, repair costs or surveyors involved.

47.     During the course of carrying out permanent repairs to the composite hull and rudder at Thunderbolt Marine, it was discovered that the scope of repairs required was far greater than estimated in January 2007 and that by osmosis water trapped in the hull composite had spread further through the hull material causing delamination which necessitated a lengthier repair period and greater repair costs.

48.     TENACIOUS, LTD proceeded with the repairs, removed and replaced the damaged hull composite material, and completed the repairs without any notice whatsoever to UNDERWRITERS or any opportunity on the part of UNDERWRITERS to appoint a surveyor to view and inspect the damaged area before repairs were begun, to approve the repair yard or to approve the repair costs.

49.     TENACIOUS, LTD, in violation of the terms and conditions of the Policy, incurred substantial expenses for which they now maintain UNDERWRITERS are liable without obtaining UNDERWRITERS' written permission in advance.

50.     The first notice to UNDERWRITERS that permanent repairs to the grounding damage had been undertaken was in August 2007 after those repairs were essentially complete.  At that time, the Insured presented a claim to UNDERWRITERS in the amount of $230,220.51.

51.     Without the opportunity to appoint a surveyor to view the damage on their behalf, to approve the repair yard or repair costs, or to approve the surveyor, UNDERWRITERS' ability to fully evaluate the claim was severely prejudiced.

52.     During the process of UNDERWRITERS' review of the claim presented by the Insured, a controversy has arisen with regard to several issues, including, but not limited to, whether the Insured failed to comply with the terms and conditions of the Policy and prejudiced UNDERWRITERS by not notifying UNDERWRITERS of the repairs being undertaken at Thunderbolt Marine thereby preventing UNDERWRITERS from being able to appoint a surveyor approved by them to inspect the damage and approve the yard and repair costs; whether the insured may recover the cost of repairs from UNDERWRITERS incurred contrary to the terms of the Policy without UNDERWRITERS prior written approval; whether the Insured failed to restore the vessel to a seaworthy condition as soon as reasonably possible by promptly carrying out permanent repairs; whether the Insured failed to advise UNDERWRITERS of the material fact that permanent repairs had not been made at Rybovich, the vessel thereafter continuing to operate with temporary repairs without the express permission of Underwriters; whether the Insured failed to act as a prudent uninsured would act and failed to promptly take all reasonable steps necessary to protect the Yacht from further loss; whether the Insured failed to act as a prudent uninsured would act and failed to cause a thorough and detailed survey and inspection of the hull and rudder at Rybovich to fully and accurately ascertain the scope and extent of damage to the hull and rudder; whether the cost of repairs to the hull and rudder was increased by the delay of the Insured in affecting permanent repairs; and whether the increased cost of repairs was attributable to deterioration and/or osmosis, excluded causes of loss under the Policy, because of the delay in affecting permanent repairs.

53.     As a result of these questions and issues, UNDERWRITERS are in doubt as to the extent to which there may be coverage under the policy for the loss claimed and, if such coverage is found, as to the amount of indemnity to which the Insured is entitled under the facts of this case and the terms and conditions of the Policy. A genuine case or controversy exists, therefore, and the guidance of this Court is sought to find and declare the facts, rights, liabilities and duties of the parties whereupon UNDERWRITERS may promptly act in accordance therewith.

54.     This Court accordingly has jurisdiction to declare the rights, liabilities, and duties of the parties to the attached contract of marine insurance.

## COUNT I

### TENACIOUS, LTD BREACHED THE TERMS AND CONDITIONS OF THE POLICY AND PREJUDICED UNDERWRITERS

55.     UNDERWRITERS re-allege and incorporate by reference hereto the allegations of paragraphs 1 through 52, *supra,* as if set forth fully herein.

56.     Defendant, TENACIOUS, LTD has breached the terms and conditions of the Policy thereby causing prejudice to UNDERWRITERS and interfering with their ability to fully and properly determine their rights, defenses, duties and obligations under the Policy and to properly evaluate and adjust this claim.

57.     As set forth in more detail *supra*, the Insured had a duty under the Policy to keep UNDERWRITERS advised of any material fact or circumstances relating to this insurance and the interests insured.  The Insured was reminded of this duty by their own Broker in the e-mail of January 5, 2007 wherein they were directed to keep UNDERWRITERS advised of further developments and report the details of permanent repair costs after the Yacht arrived in Palm Beach.

58.     The Insured had previously represented to UNDERWRITERS that the extent of damage to the hull and rudder would be fully inspected, surveyed and repaired in Palm Beach under the oversight and approval of a composite expert and a marine surveyor.  The decisions by the Insured not to do permanent repairs to the vessel; not to have the full extent of the damage to the hull and rudder inspected and surveyed in Palm Beach and not to have the repairs done under the oversight of a composite expert and approval of a marine surveyor were material facts relating to UNDERWRITERS' interests with regard to any future claim for damage to the hull and rudder.  Had such a detailed inspection and survey of the vessel been undertaken, the true scope and extent

of the damage would have been discovered and reported and UNDERWRITERS would have directed that prompt and proper permanent repairs be undertaken.

59.     As set forth in more detail, *supra*, the Insured had a duty under the Policy not to operate the Yacht without the express written permission of UNDERWRITERS until permanent repairs had been affected that fully restored the Yacht to a seaworthy condition.   The fact that the grounding damage to the hull and rudder rendered the vessel unseaworthy is amply illustrated by the fact that, after the grounding, the captain only moved the vessel to a nearby safe anchorage and remained there until temporary repairs could be made.   The Yacht was then declared sufficiently seaworthy only for a voyage from Sampson Cay to Freeport, Grand Bahama.   Permission for the Yacht to operate with temporary repairs was sought from UNDERWRITERS who only agreed that the vessel could operate with the temporary repairs then in place from the Bahamas to Palm Beach, Florida.   Thereafter, the Insured never sought nor obtained the express, written approval of UNDERWRITERS required by the Policy to continue to operate the vessel in charter service for more than four months pending completion of permanent repairs.   If such approval had been sought by the Insured, UNDERWRITERS would not have given such approval without the thorough, detailed inspection and survey of the Yacht they believed was going to be made in Palm Beach with the consequent revelation of the actual nature and extent of the grounding damage and the necessity for more extensive and permanent repairs being identified and directed.

60.     As set forth in more detail, *supra*, the duty of UNDERWRITERS under the Policy to pay the necessary and reasonable cost to repair the Yacht is predicated on

those reasonable and necessary costs having been determined by a repair yard, equipment repairers and surveyor approved by UNDERWRITERS and the cost of repairs approved in advance by UNDERWRITERS. Such a requirement under the Policy necessarily gives rise to a duty of the Insured under the Policy to notify UNDERWRITERS of their intent to undertake permanent repairs, the repair yard at which they propose to affect such repairs and to give UNDERWITERS the opportunity to approve the repair yard, repairers and surveyors. At a minimum, such notice would have enabled UNDERWRITERS to appoint their own surveyors to attend the Yacht and inspect and survey the nature and extent of damage such that UNDERWRITERS would be fully informed as to such vital circumstances.

61.    As set forth in more detail *supra*, the Insured had a duty under the Policy not to incur any expenses for which UNDERWRITERS might become liable without UNDERWRITERS' written permission.

62.    In breach of said duties under the Policy, the Insured, without notice to UNDERWRITERS, proceeded with repairs, destroyed and disposed of the evidence of the true nature and extent of the damage to the hull and rudder and entered into a contract for the repair of the vessel in an amount, at a repair yard and with repairers that had not been approved by UNDERWRITERS.

63.    The Insured, TENACIOUS,LTD breached their duty under the Policy, as set forth herein, by, *inter alia*, failing to advise UNDERWRITERS that the Yacht was not inspected, surveyed and repaired at Palm Beach under the oversight and approval of a composite specialist and marine surveyor; by not advising UNDERWRITERS that permanent repairs were not made while the Yacht was at Palm Beach; by operating the

Yacht pending completion of permanent repairs to make the yacht fully seaworthy without the express written approval of UNDERWRITERS; by not seeking approval of or giving notice to UNDERWITERS as to the repair yard, repair costs, repairers and surveyors to make permanent repairs to the hull and rudder; by not seeking UNDERWRITERS' written permission to enter into the ship repair contract with Thunderbolt Marine and by spoliation of the evidence of the nature, scope and extent of the original damage and damage as repaired.

64.     On information and belief, many, if not all, of the various enumerated acts of commission, omission and breaches of the Insured's duties under the Policy were willful or intentional.

65.     As a direct and proximate result of the Insured's breach of their duties under the Policy, UNDERWITERS have been prejudiced and have suffered damages. As a result of the Insured's spoliation of evidence and failure to notify, UNDERWRITERS have been denied the ability to independently inspect, verify and evaluate the nature and extent of hull and rudder damage attributable to the initial grounding as opposed to that damage caused by the passage of time between January 8th when permanent repairs could or should have been completed in Palm Beach and June 5th some five months later, when the actual extent of the damage then existing was first inspected and surveyed.

66.     As a direct and proximate result of the Insured's breach of their duties under the Policy, Underwriters were denied the opportunity to participate in the inspection, survey and analysis of the scope and extent of damage, preparation of the

repair specification and negotiation of the repair contract resulting, on information and belief, in repair costs that are excessive and unreasonable.

67.     As a direct and proximate result of the Insured's breach of their duties under the Policy, UNDERWRITERS have also been forced to incur unreasonable and excessive expenses to analyze, assess and adjust the claim that would have been unnecessary if the insured had not breached the insurance agreement.

68.     As a direct and proximate result of the Insured's breach of their duties under the Policy, the ultimate cost of permanent repairs to the hull and rudder were significantly increased over and above those repair costs that would have been incurred had permanent repairs to fully restore the Yacht to her pre-grounding condition been promptly and properly carried out at Rybovich in January 2007.

69.     WHEREFORE, UNDERWRITERS respectfully request this Court to adjudge, find and declare the following:

a.     Whether the Insured, TENACIOUS, LTD breached their various duties to UNDERWRITERS under the Policy as set forth in more detail *supra*;

b.     Whether the various and sundry breaches of the Policy terms and conditions by the Insured, TENACIOUS, LTD, prejudiced UNDERWRITERS;

c.     Whether by virtue of the breaches of the Policy terms and conditions by the Insured, the obligation of UNDERWRITERS to indemnify the Insured, TENACIOUS, LTD, is limited to:

1) The cost of temporary repairs performed by Overseas Salvage & Maintenance in the amount of $3, 537.50;

2)  The cost of hauling TENACIOUS at Rybovich in Palm Beach, Florida for inspection of the hull following the grounding in the amount of $7,670.09;

3) The cost of the fuel expended to move TENACIOUS to and from the Bahamas for the purpose of hauling the Yacht to inspect the hull for damage following the grounding in the amount of $2,000.00;

4)  The reasonable cost of permanent repairs to the hull and rudder of TENACIOUS attributable to the grounding had said repairs been promptly and properly carried out at Rybovich in January 2007.

d.      To award UNDERWRITERS their fees and costs arising from the Insured's breach of the terms and conditions of the Policy:

e.      Grant UNDERWRITERS such other relief as this Court may deem just and proper.

**COUNT II**

**BREACH OF THE INSURED'S DUTY TO PROMPTLY TAKE ALL REASONABLE STEPS TO PROTECT THE YACHT FROM FURTHER LOSS**

70.     UNDERWRITERS re-allege and incorporate by reference hereto the allegations of paragraphs 1 through 52, *supra,* as if set forth fully herein.

71.     As set forth in more detail *supra*, the Insured had a duty under the Policy, in the event of a loss or damage affecting the seaworthiness of the Yacht, to restore the yacht to a seaworthy condition as soon as reasonably possible.

72.     As set forth in more detail *supra*, the Insured had a duty under the Policy, to act as a reasonable uninsured would act to take all reasonable steps promptly to protect the Yacht from further loss.

73.     On information and belief, as a result of the grounding of December 28, 2006, TENACIOUS suffered severe damage to the rudder and hull.  The exterior laminate was fractured in at least three places with the damage going through the Kevlar matting to the foam core of the composite rudder and hull with separation and delamination of the exterior laminate and interior matting.  The exterior laminate was sufficiently fractured, separated and delaminated to the point that fingers could be inserted between the exterior laminate.

74.     As a result of these fractures and delamination, a significant quantity of seawater entered the composite material of the hull intruding and penetrating into the matting, foam core and the areas between the exterior laminate and matting.

75.     The captain and engineer were only able to make an initial, cursory, underwater assessment of the damage immediately after the grounding.

76.     On information and belief, such a cursory underwater inspection could not have reasonably been expected to fully and accurately assess the actual nature, scope and extent of the damage, delamination and damage to the structural integrity of the composite hull and rudder.

77.     After temporary repairs were affected by Overseas Salvage & Maintenance, the Yacht went to the Rybovich yard in Palm Beach where the Yacht was hauled for a bottom inspection.

78.     Reasonable steps to protect the Yacht from further loss such as would have been taken by a prudent uninsured would have included completely removing the underwater epoxy placed on the hull and rudder damage by Overseas Salvage & Maintenance as a temporary repair so as to allow the sea water to drain from the hull and rudder; to allow the hull and rudder to sufficiently dry out before repairs were undertaken; and to remove any visual barriers that would obscure a thorough visual inspection of the hull and rudder.  The Insured breached its duty under the Policy and did not direct that the underwater epoxy placed over the damage by Overseas Salvage & Maintenance be removed but, rather, instructed that it be left in place, smoothed and sealed, thus  trapping sea water within the hull.

79.     Reasonable steps to protect the Yacht from further loss such as would have been taken by a prudent uninsured would have included a thorough and complete inspection of the hull and rudder by both a qualified composite expert and a qualified marine surveyor to accurately and fully determine the actual nature and extent of the fractures, delamination and damage before deciding what repairs were required to restore the Yacht to a seaworthy condition. The Insured breached its duty under the Policy and did not cause such an inspection to be made while the Yacht was at Rybovich.

80.     Reasonable steps to protect the Yacht from further loss such as would have been taken by a prudent uninsured would have included a prompt, thorough and complete permanent repair of the grounding damage to the hull and rudder with said repairs being supervised and inspected by both a qualified composite expert and a qualified marine surveyor to ensure that the Yacht was fully restored to a seaworthy

condition as soon as reasonably possible. The Insured breached its duty under the Policy and took no such action to affect permanent repairs to the Yacht while she was at Rybovich.

81.    On information and belief, many, if not all, of the various enumerated acts of commission, omission and breaches of the Insured's duties under the Policy were willful or intentional.

82.    As a direct and proximate result of the Insured's breach of its duties under the Policy, the Yacht was operated for a period in excess of 18 weeks, including periods of rough seas and heavy weather, under circumstances and conditions which caused the hull to flex and move, causing further delamination of the composite hull material; causing entrapped sea water to further spread by osmosis, a cause of loss excluded under the Policy, resulting in further delamination; on information and belief, the temporary repairs failed in whole or in part allowing additional sea water to enter the hull and penetrate the laminates and composite core causing further damage and delamination; all of the aforesaid increasing the scope and extent of damage to the hull and rudder and significantly increasing the ultimate cost of repairs to the hull and rudder.

83.    WHEREFORE, UNDERWRITERS respectfully request this Court to adjudge, find and declare the following:

a.    Whether the Insured, TENACIOUS, LTD breached their various duties to UNDERWRITERS under the Policy as set forth in more detail *supra*;

b.    Whether the various and sundry breaches of the Policy terms and conditions by the Insured, TENACIOUS, LTD, prejudiced UNDERWRITERS;

c.      Whether by virtue of the breaches of the Policy terms and conditions by the Insured, the obligation of UNDERWRITERS to indemnify the Insured, TENACIOUS, LTD, is limited to:

1) The cost of temporary repairs performed by Overseas Salvage & Maintenance in the amount of $3,537.50;

2)  The cost of hauling TENACIOUS at Rybovich in Palm Beach, Florida for inspection of the hull following the grounding in the amount of $7,670.09;

3) The cost of the fuel expended to move TENACIOUS to and from the Bahamas for the purpose of hauling the Yacht to inspect the hull for damage following the grounding in the amount of $2,000.00;

4)  The reasonable cost of permanent repairs to the hull and rudder of TENACIOUS attributable to the grounding had said repairs been promptly and properly carried out at Rybovich in January 2007.

d.      To award UNDERWRITERS their fees and costs arising from the Insured's breach of the terms and conditions of the Policy;

e.      Grant UNDERWRITERS such other relief as this Court may deem just and proper.


**COUNT III**

**THERE IS NO COVERAGE UNDER THE POLICY FOR MANY OF THE DAMAGES CLAIMED BY THE INSURED**

84.      UNDERWRITERS re-allege and incorporate by reference hereto the allegations of paragraph 1 through 52, *supra,* as if set forth fully herein.

85.     As set forth in more detail *supra*, on or about May 11, 2007, the Insured caused TENACIOUS to arrive at Thunderbolt Marine in Savannah, Georgia, for the purpose of undergoing a period of refit and repair, including permanent repairs to the damage to the composite hull and rudder resulting from the subject grounding.

86.     The Yacht remained at Thunderbolt Marine undergoing an extensive refit and repairs until on or about August 15, 2007.

87.     In addition to permanent repairs to the grounding damage to the composite hull and rudder, the Insured, TENACIOUS, LTD, directed Thunderbolt Marine to carry out extensive other work to the Yacht, wholly unrelated to the repair of the grounding damage, including, but not limited to, removal, servicing, repair and replacement of the masts, standing rigging and running rigging; removal, servicing and replacement of two centerboards; renovations and repairs to the crew cabins and accommodations; repairs and renovations to the galley and other interior accommodation spaces; repairs to the propellers and running gear; teak deck and ladder repairs; various repairs to the cockpit, superstructure and topside decks; repairs to various hatches; electrical and electronic repairs; painting the superstructure; re-painting of the anti-fouling paint on the underwater body of the hull and other various work totaling in excess of $853,532.00, inclusive of the permanent repairs to the hull and rudder.

88.     There is agreement between the Parties as to much of this repair work being entirely for the account of the Insured and excluded from the Insured's claim to be indemnified for permanent repairs to the hull and rudder as a result of the grounding.

89.     As set forth in more detail, *supra*, the Policy only provides coverage for the reasonable and necessary cost of repairing covered damage. Covered damage includes accidental direct physical damage to the Yacht but does not include the repair or replacement of damage to the Yacht caused, *inter alia,* by wear and tear, deterioration, weathering or as the result of the failure of the Insured to act as a prudent uninsured would act to prevent further loss following an accident or the failure of the Insured to maintain the Yacht in a seaworthy condition.

90.     However, there is disagreement between the Parties as to the extent to which certain cost are attributable, in whole or in part, to the repairs to the hull and rudder directly caused by the grounding, as opposed to such costs being attributable, in whole or in part, to the repairs to the hull and rudder attributable to the Insured's delay in affecting permanent repairs and/or being attributable in whole or in part, to the extensive work being done by the Insured that was wholly unrelated to any repairs whatsoever to the hull and rudder.

91.     UNDERWRITERS maintain that they are obligated to indemnify the Insured only for their apportioned share of the costs incurred during the repair period at Thunderbolt Marine for a number of general expenses, including, but not limited to, dockage; crew accommodations ashore; yard services to the yacht such as air conditioning, electricity and phone service; the costs of covering and protecting the Yacht's decks, finishes, fittings from damage during repairs; and the cost of re-painting the anti-fouling paint on the underwater body of the hull and rudder.

92.     Further, UNDERWRITERS' maintain that there was no damage to the two centerboards as a result of the grounding and they functioned without difficulty for 18

weeks following the grounding.   Therefore, the cost of removing, serving and re-installing the two centerboards should entirely be for the account of the Insured.

93.     WHEREFORE, UNDERWRITERS respectfully request this Court to adjudge, find and declare the following:

a.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of dockage incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses attributable to the other repairs and renovations carried out by the Insured for their own account;

b.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of crew accommodations ashore incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses

attributable to the other repairs and renovations carried out by the Insured for their own account;

c.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of yard services incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses attributable to the other repairs and renovations carried out by the Insured for their own account;

d.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of protective coverings incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses attributable to the other repairs and renovations carried out by the Insured for their own account;

e.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of removing, servicing and replacing the two center boards incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses attributable to the other repairs and renovations carried out by the Insured for their own account;

f.      The extent to which UNDERWRITERS are obligated to indemnify the Insured, TENACIOUS, LTD, for the cost of other expenses incurred without the prior approval of UNDERWRITERS while the Yacht was undergoing repairs at Thunderbolt Marine to the extent that said expense would have been incurred in any case to affect prompt, permanent repairs to the damage to the hull and rudder directly attributable to the grounding, and apportioning such costs to exclude the time and expense incurred in repairing damage to the hull and rudder proximately caused by the Insured's delay in affecting permanent repairs and apportioning and excluding those expenses attributable to the other repairs and renovations carried out by the Insured for their own account;

g.      Grant UNDERWRITERS such other relief as this Court may deem just and proper.

CASE NO.: 10-60021-CIV-COHN/SELTZER

WHEREFORE, UNDERWRITERS respectfully request this Court to enter judgment in their favor, award them their reasonable costs and attorneys' fees and grant them such other relief as the Court may deem just and proper.

Dated this 19th day of April, 2010.

Respectfully submitted,

__/s/ Charles S. Davant_____
MARK R. HOUCK
Florida Bar No.: 286613
mhouck@houckanderson.com
ANDREW W. ANDERSON
Florida Bar No.: 213144
aanderson@houckanderson.com
CHARLES S. DAVANT
Florida Bar No.: 15178
HOUCK ANDERSON P.A.
Attorneys for Plaintiffs
200 South Biscayne Boulevard, Suite 300
Miami, Florida 33131-2332
Telephone: (305) 372-9044
Facsimile: 305) 372-5044

# MARSH

Marsh Ltd
Capital House
1 Houndwell Place
Southampton, SO14 1HU
023 8021 8700  Fax  023 8021 8391
mike.winbridge@marsh.com
www.marsh.co.uk

2nd January 2007

## ENDORSEMENT

| | | |
|---|---|---|
| Assured | : | Tenacious Ltd ( BVI Corp ) |
| Vessel | : | "Tenacious" |
| Period | : | 12 months at 7th September 2006 |
| Interest | : | Yacht |
| Policy No | : | YS40000L2005 |
| Endorsement No | : | 11901210 |
| Effective Date | : | 27th December 2006 |

It is hereby noted and agreed the vessel has been re registered in the Marshall Islands and the shareholder is now a Marshall Islands Company.
As a consequence of the above the policyholder name is amended to read;

Tenacious Ltd.

All other terms, clauses and conditions remain unchanged.

FOR AND ON BEHALF OF
MARSH PRIVATE CLIENTS

Registered in England Number: 1507274, Registered Office: 1 Tower Place West Tower Place, London EC3R 5BU
Marsh Ltd is authorised and regulated by the Financial Services Authority.
Marsh Ltd conducts its general insurance activities on terms that are set out in the document "Our Business Principles and Practices". This may be viewed on our website http://www.marsh.co.uk/aboutus/aboutmarsh.php.html

MMC Marsh & McLennan Companies



EXHIBIT

A

tabbies

This is to certify that in accordance with the authorisation granted under Contract No. 11901210 undersigned by the Insurers detailed in the attached schedule and in consideration of the premium specified herein an insurance has been effected in accordance with the terms and conditions herein or endorsed hereon.

POLICY NO:            YS40000L2005

TYPE                  Hull                          FORM: MAR 91          COPY

AGENT:                Atlass Insurnace Group
                      1300 SB 17th Street
                      Suite 220
                      Ft Lauderdale,
                      Fl 33316       License No A009590

STATE:                Non US

SURPLUS LINES
AGENT:                Not applicable

ASSURED:              Tenacious Ltd (BVI Corp) c/o Winchester Trust FTRR&I
                      Hamilton, Bermuda

LOSS PAYEE:           None advised

YACHT:                'Tenacious' 1994 Trident Cutter 115' 2 x Lugger 425hp each 2 knots

CREW NO:              5 full time and 1 part time

MOORING:              Hamilton, Bermuda  - Assured's residence

FLAGGED:              BVI

PERIOD:               Twelve Calendar Months commencing 7th September 2006 to 6th September 2007
                      both days inclusive beginning and ending with Local Standard Time at address of
                      Assured.

USE:                  Private pleasure & / or Skipper charter warranted owners Skipper and crew in
                      charge at all times  &/or corporate entertaining use only.

CRUISING:             Inland and coastal waters of East Coast and Gulf Coast US Florida and Bahamas
                      And East Caribbean Including all navigable waters therein excluding Cuba , Haiti
                      and Colombia or held covered at a premium to be hereafter arranged .

                      Warranted not South of Tropic of Cancer between 1st June and 30th November

TOTAL VALUE:          USD  7,225,000  So Valued

INTEREST:             PART ONE
                      1) Hull and Materials, Engines and Machinery and
                         everything connected therewith, nothing excluded
                      2) Liability .
                      3) Uninsured Owner or Operator Coverage
                      4) Personal Effects
                      5) Fine Art
                      6) Medical Payments
                      7) Mortgagees Interest
                      8) Loss of Charter Hire
                      9) War Risks and Strikes Risks
                      10) Crew Welfare and Additional Expenses
                      11) Additional Insured Coverage

**PART TWO**
1) Increased Value of Hull and Machinery etc.
2) Excess Liabilities
3) War Risks

**SUM INSURED:**  **PART ONE**
1) Valued USD 5,250,000 including:-
   2002 Novaurania 17' and Yamaha outboard Valued USD 23,000, Dinghies,
   Outboards, Personal Watercraft – details and Values To Be Advised and
   Personal Effects as detailed in 4 below.
2) USD 5,000,000   and/or as defined therein.
3) USD 2,000,000
4) USD 50,000  All items valued USD  1000    or above in
   respect of owner / guest or USD500    or above in respect of crew to be
   separately scheduled.
5) Not Applicable
6) USD 100,000 any one person USD 500,000 any accident or occurrence
   involving more than any one person.
7) Not Applicable
8) Not Applicable
9) Not applicable
10) As and when applicable
11) As and when applicable

**PART TWO**
1) USD  1,750,000
2) Not Applicable
3) Not applicable

**DEDUCTIBLE:**  Underwriters hereon only to be liable for the excess of :-
Hull and Machinery etc                          USD  52,500 )each and every claim
                                                            )except Total Loss
                                                            )which shall be payable
                                                            )in full

Tenders, Dinghies, Watercraft, Outboards, - USD   250 )each item, each and
Windsurfers, Personal Equipment, Mopeds,               )claim except total loss
Cycles and the like, Personal Effects and Fine Art     )of the individual item
                                                       )which shall be payable
                                                       )in full.

Liability Deductible                        - USD   500 )each and every claim.
Medical Payments Deductible                 - USD   100 )each and every claim.
Navigational and Communication             - USD5,000 )each and every claim.
Equipment Deductible.
Lightning Deductible                       - USD5,000 )each and every claim.

Where there is an accident or occurrence which involves more than one
deductible then the largest single deductible shall apply.

**CONDITIONS**
**PRECEDENT:**  Subject to all Survey recommendations complied with prior
to in commission use

**PREMIUM:**  USD57,750.00

**PAYMENT TERMS:** Marsh require payment within 30 days of inception.

CONDITIONS:    Subject to all Terms, Conditions and Limitations as Contained in the Primary
Luxury Yacht Wording (1st October 2002) Part One Sections as detailed on page 2

It is further understood and agreed that this insurance will remain in full force during
routine maintenance and annual refit.
Notwithstanding the foregoing it is a condition precedent that if vessel is under major
repair/alteration including hot work or that the yard has requested a waiver of
subrogation from the Owner or his Legal Representatives then prior agreement must
be obtained from participating insurers hereunder at terms and conditions to be
hereafter agreed.
Furthermore the Owner or his Legal Representatives must provide to participating
insurers hereunder a copy of the shipyards SRL insurance documentation and full
details of work being carried out.

Underwriters will pay for a total loss to Your Yacht if the Yacht is completely
lost or destroyed; or the cost of recovering and/or repairing the Yacht is greater
than ninety four percent of amount of insurance shown above

Dinghies, tenders, toys, engines and machinery and the like are placed under
this section 100% and therefore all claims arising in respect of same will be
treated and paid accordingly

Including loss or damage to Mopeds and Bicycles whilst on board and
whilst parked alongside only.

Agreed to cover any additional tenders, dinghies, outboards, windsurfers and
personal watercraft which the Assured acquires ownership of during the policy
period subject to the maximum designed speed not exceeding 35 knots and subject
to payment of any additional premium required. Prior to notification to
Underwriters, the maximum liability hereunder shall be the cost to the Assured or
USD50,000, whichever is less.

Liability Coverage-Section 2 limited to as stated above and/or as
defined therein.

It is hereby noted and agreed that from time to time there may be more
than the State Room capacity of Guests on board whilst Yacht alongside,
at anchor or underway.

Uninsured Owner or Operator Coverage – Section 3 Limit as stated above

Personal Property Coverage-Section 4 Limit as stated above

Fine Arts Coverage – Section 5 if and when declared limit to be
hereafter declared and agreed.

Medical Payments Section 6 amended as follows:-
subsection b)
The words "and signed onto the *Yacht*" are hereby deleted
Exclusions:
Exclusion m) is hereby deleted

Mortgagees Interest Coverage – Section 7 if and when declared limit to
be hereafter declared and agreed.

Loss of Charter Hire Section 8 if and when declared limit to be
hereafter declared and agreed.

War and Strikes Risks Coverage – Section 9 Not applicable.

Crew Welfare and Additional Expenses Section 10 as and when applicable.

Additional Insured Coverage Section 11 as and when applicable

**INCREASED VALUE**
**CONDITIONS:** Subject to all Terms, Conditions and Limitations as Contained in the Primary
Luxury Yacht Wording (1st October 2002) Part Two Section 1 only and to
follow primary hull in all respects including claims settlements

**GENERAL**
**TERMS AND**
**CONDITIONS:** Institute Radioactive Contamination, Chemical, Biological,
Bio-Chemical and Electromagnetic Weapons Exclusion Clause (10/11/03) CL. 370
USCAN B 29/01/04 to be used with CL 370.
Institute Cyber Attack Exclusion Clause (10/11/03) CL 380.
Lloyds Privacy Policy Statement (LSW 1135B)
It is hereby noted and agreed that from time to time there may be more
than the State Room capacity of Guests on board whilst Yacht alongside,
at anchor or underway
It is hereby understand and agreed that this insurance shall remain fully in force
whilst the Yacht is ashore during annual maintenance &/or refit.

**SEVERAL**
**LIABILITY:** LSW 1001
The subscribing insurers' obligations under contract of insurance to
which they subscribe are several and not joint and are limited solely
to the extent of their individual subscriptions. The subscribing
insurers' are not responsible for the subscription of any
co-subscribing insurer who for any reason does not satisfy all or
parts of its obligations.

**CHOICE OF**
**LAW AND**
**JURISDICTION:**
This policy shall be governed by and construed in accordance with the law of the
particular state of the United States of America and each Party agrees to submit to
the exclusive jurisdiction of the courts of the United States of America.

**SECURITY:**
**LUXURY FACILITY**
| | | | |
|---|---|---|---|
| 40.70% | 958 | GSC | ZBMHCWCN8814 |
| 16.28% | 2488 | AGM | AOYZ35SB3562 |
| 4.88% | 609 | AUW | 01CCSTK05AAX |
| 30.00% | | AXIS Specialty London – 3105660105MY | |
| 8.14% | | Wurttembergische | 202144700005 |
| 100.00% | | | |

1 October 2002

Note: the Table of Contents below and its index are for guidance only and do not contain nor constitute any term of nor condition of this Insurance Cover

# TABLE OF CONTENTS

| | | |
|---|---|---|
| AGREEMENT | | page 2 |
| DEFINITIONS | | pages 3/4 |
| Section A | OBLIGATIONS | pages 5/6 |
| | Obligations of the insured | page 5 |
| | Warranty of Seaworthiness | page 6 |
| | Compliance warranty | page 5 |
| | Concealment or misrepresentation | page 5 |
| | Obligations of the insurer | page 6 |
| | Breach of Warranty | page 6 |
| | Breach of charter agreement | page 6 |
| | Defence and cost | page 6 |
| Section B | GENERAL CONDITIONS | pages 7/8 |
| | Territory of application | page 7 |
| | Policy period | page 7 |
| | Continuation | page 7 |
| | Co-Loss payee | page 7 |
| | Transfer of interest and insurance | page 7 |
| | Arrest, confiscation, detention | page 7 |
| | Punitive or consequential damages | page 7 |
| | Non-renewal | page 7 |
| | Conformity to statutes | page 8 |
| | Change of ownership | page 8 |
| | Cancellation | page 8 |
| Section C | CONDITIONS IN THE EVENT OF LOSS | pages 9/11 |
| | Notification of insurers | page 9 |
| | Notification of authorities | page 9 |
| | Protection and recovery | page 9 |
| | Co-operation with insurers | page 9 |
| | Preservation of rights | page 9 |
| | Impairment of recovery | page 9 |
| | Insurers' right to recover | page 10 |
| | Other insurance | page 10 |
| | Non waiver | page 10 |
| | Payment of loss | page 10 |
| | Bankruptcy | page 10 |
| | Insurance reduced | page 10 |
| | Legal action against insurers | page 10 |
| | Appraisal | page 11 |
| | Application of deductibles | page 11 |
| Section D | JURISDICTION AND/OR SERVICE OF SUIT | pages 12/13 |
| | English Jurisdiction Clause | page 12 |
| | Service of Suit Clause USA | pages 12/13 |

1 October 2002

2

## AGREEMENT

*We* will provide the insurance on the terms of this policy, subject to the conditions, limitations, exclusions, definitions and warranties contained herein or endorsed hereon and in return for the premium and compliance with the policy provisions. The coverage provided by this policy is also granted subject to the statements made by *You* or *Your* agent, on the application signed by *You* or on *Your* behalf and made part of this policy by attachment.

This policy contains all the agreements between *You* and *Us.* No changes may be made unless they are in writing, signed by *Us.*

# DEFINITIONS

In this policy:

1. *"You"* and *"Your"* refer to the Insured named on the Declaration Page.

2. *"We"*, *"Our"* and "Us" refer to the Underwriters providing this insurance named on the Declaration Page.

3. *"Insured Person"* means *You*, a related household member, or the corporation which owns the *YACHT* or any person operating the *Yacht* with *Your* prior permission. This does not include:

   a) Paid Captain or Crew Member.

   b) A person or organization, or their agent or employees, operating a marina, shipyard, repair service, sales agency or like business, unless prior written approval has been given by *Us.*

4. *"Yacht"* means the named vessel and tender(s) and/or speedboat(s), wet bikes, jet-skis, sailing craft and windsurfers owned by *You* and described on the Declaration Page relating to the relevant Part of this Insurance, and the equipment and accessories normally needed on board in the use and maintenance of the *Yacht* including Hull, engines, machinery, masts, spars, rigging, sails, equipment, furniture and accessories on board the *Yacht* and tender.

5. *"Personal Property"* means clothing, personal effects, credit cards, jewelry, fishing gear and sports equipment which belong to *You* or members of *Your* family and crew while these items are on board *Your Yacht* or are being loaded or unloaded. It does not include money, travelers checks or any other valuable papers or documents, unless specifically declared and agreed by *Us.*

6. *"Fine Arts"* means works of art which belong to *You* or members of *Your* family, while these items are on board *Your Yacht* or whilst being loaded or unloaded.

7. *"Insured Property"* means the *Yacht, Personal Property* and *Fine Arts.*

8. *"Bodily Injury"* means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

9. *"Accidental Physical Injury"* means an identifiable physical injury which

   a) is caused by an accident during the period of insurance, and

   b) results in death or disablement within eighteen calendar months from the date of the accident solely and independently of any other cause (except illness directly resulting from, or medical or surgical treatment rendered necessary by, such injury).

1 October 2002

4

10.   *"Accident"* or *"Accidental"* means a sudden and unintended specific event which occurs at an identifiable time and place.

11.   *"Permanent total disablement"* means disablement, which entirely prevents an individual covered by this insurance from attending to their usual business or occupation, which lasts continuously for eighteen calendar months and at the expiry of that period is beyond hope of improvement.

12.   *"Temporary total disablement"* means disablement which entirely prevents a crew member from attending to their usual business.

13.   *"Loss of Limb"* means loss or physical separation of a hand at or above the wrist or of a foot at or above the ankle and includes total and irrecoverable loss of use of hand, arm or leg.

14.   *"Wages"* and *"Salary"* mean the net income of the relevant party after all applicable deductions for tax and other governmental imposition whether conventionally paid by that party or by *You.*

15.   *"Property Damage"* means physical damage to or destruction of tangible property.

16.   *"Mechanical Breakdown"* means failure in the working mechanism of machinery or other equipment which causes the same to cease functioning or to function improperly.

17.   *"Guest"* means any one or more of a maximum (unless otherwise agreed) of 12 guests traveling on *Your Yacht.*

18.   *"Warranty"* is a term of the policy whereby a state of fact exists or is stated to exist and or the insured Person undertakes to do or not do something or to fulfil or not to fulfil some condition. If the *Insured Person* does not strictly comply with the terms of a warranty, cover under this policy will cease and any loss that occurs at that time or thereafter will not be paid.

19.   *"Uninsured owner or operator"* means an owner or operator of any vessel other than the *Yacht* named in this policy who is legally responsible for the accident, and:

   a)   to whom no liability policy applies or

   b)   who cannot be identified (such as a hit and run operator).

20    *"Illness"* means an illness which first becomes apparent during the period shown in the schedule and which results in the temporary total disablement or permanent total disablement of the insured person.

Where they occur in the text of Coverage Wording,
the above defined words and terms
appear in *Italics*

1 October 2002

5

## SECTION A   OBLIGATIONS ARISING OUT OF THIS INSURANCE

**1**      *Your obligations as Insured*

**1**      *Warranty of Seaworthiness*

It is *Warranted* by *You* that the *Yacht* shall be maintained in a seaworthy condition at all times.  In the event of a loss or damage affecting the seaworthiness of the *Yacht*, the *Yacht* shall be restored to a seaworthy condition as soon as reasonably possible and the *Yacht* will not be operated pending completion of such repair without *Our* express written approval.

**2**      *Compliance warranty*

It is *Warranted* by *You* that all necessary or required licenses, permits and certificates pertaining to the use and operation of the *Yacht* are in full force and effect as of the effective date of the coverage's provided, and will be so during the period of this policy, and that during all such times *You* will comply with all laws, rules and regulations that apply to the uses to which *You* employ the *Yacht*.

**3**      *Concealment or misrepresentation*

It is *Your* duty to keep *Us* advised of any material fact or circumstance relating to this insurance and the interests insured.  *We* do not provide coverage for any *Insured Person* who has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance.

1 October 2002                                                                                 6

2     *Our* obligations as Insurer

*Breach of Warranty*

*We* will pay for loss or damage to the *Yacht* when caused by the breach of any *Warranty* contained in this policy by a Paid Captain and/or Paid Crew members or a Charterer provided the breach of such *Warranty* does not constitute a violation of the laws of the country that has jurisdiction over the *Yacht* at the time the breach occurred or such breach is not committed with *Your* consent, approval or knowledge.

*Breach of Charter Agreement*

*We* will pay for loss or damage to the *Yacht* when caused by a breach of the charter agreement by the Charterer provided such breach is not committed with *Your* consent, approval or knowledge.

Defence and Cost

With respect to the coverage provided by *Us* to an *Insured Person*, *We* will:

a   Defend any suit against an *Insured Person* alleging claims and seeking damages which are within the coverage provided by this policy even if such suit is groundless, false or fraudulent, but *We* may make such investigation, negotiation and settlement of the claims or suit as *We* may deem necessary;

b   Pay, in addition to the applicable limits of insurance coverage stated in the relevant Section(s) on the Declaration Page:

i    All expenses incurred by *Us*, or taxed against an *Insured Person* in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before *We* have paid or tendered or deposited in Court that part of the judgment which does not exceed such limit;

ii   All reasonable expenses other than loss of earnings incurred by an *Insured Person* at *Our* request;

provided that immediate notice of any such claim or suit is given to *Us* as required above by the *Insured Person* and provided that *We* will have the right to appoint counsel of *Our* choice to investigate and, as *We* believe necessary, defend such suits. Failure to provide such notice may prejudice the insurance coverage's provided by this policy of insurance.

1 October 2002

7

## SECTION B  GENERAL CONDITIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY

1  *Territory of application*

The cover provided by this policy of insurance applies only when the *Yacht* is within the navigational and geographical limits declared and agreed on the Declaration Page, unless agreed by *Us* in writing

2  *Policy period*

This policy applies only to *accidents* or losses that occur within the policy period shown on the Declaration Page

3  *Continuation clause*

If the *Yacht* is at sea at the expiration of this insurance the risk may continue until the safe arrival of the *Yacht* at her port of destination including 24 hours thereafter

4  *Co-loss payee*

If a co-loss payee is named in this policy, any loss payable will be paid to the co-loss payee and *You*, as interest appear. If more than one co-loss payee is named the order of payment will be the same as the order of precedence of the co-loss payees. Subject to all of the other terms and provisions of this policy, *We* cover the interests of the co-loss payee

5  *Transfer of interest and insurance*

This insurance shall inure to *Your* benefit only and shall be void in case this policy or the interest insured thereby shall be sold, assigned, transferred or pledged without *Our* previous consent in writing.

6  *Arrest, confiscation, detention*

Unless stated herein to the contrary *We* will not  pay for any loss, damage, liability or expense arising out of the arrest, confiscation, sale or detention of the *Yacht* by order of any legal authority. *We* will pay the cost of any bond required for the *Yacht's* release, provided the bond amount does not exceed the amount declared and agreed under this insurance.

7  *Punitive or consequential damages*

In no event will the coverage that is provided by this policy of insurance include any coverage for punitive or exemplary damages awarded against an *Insured Person* for any reason whatsoever nor will coverage include consequential damages, including loss of use or loss due to delay, whether claimed against *Us* by an *Insured Person* or third persons.

8  *Non-renewal*

If *We* elect not to renew this policy for any reason permitted by law, *We* will notify *You* in writing *We* are not renewing.  Notice will be mailed to *You* at the address shown on the Declarations Page.  Proof of mailing shall be sufficient proof of notice.

1 October 2002                                                                                    8

**9**    *Conformity to statutes*

Any provision in this policy that conflicts with any Law or State statute is hereby amended to conform to the minimum requirements of the Law or State statute

**10**    *Change of ownership*

In the event of any change, voluntary or otherwise, in the ownership or flag of the *Yacht*, or if the *Yacht* be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the *Yacht* is entered with a Classification Society and either the Classification Society of the *Yacht* or her class therein be changed, canceled or withdrawn, then, unless *We* agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, management (being that firm, corporation or company actually involved in the day to day operation of the *Yacht*), charter, requisition or classification; provided however, that in the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the *Insured Person*, such automatic termination shall occur fifteen (15) days after such transfer. The term "new management" as used above refers only to the transfer of the management of the *Yacht* from one firm or corporation to another, and it shall not apply to any internal changes within the offices of the *Insured Person*.

This insurance shall not inure to the benefit of any transferee or charterer of the *Yacht* and if a loss payable hereunder should occur between the time of change or transfer and any deferred or automatic termination, *We* shall be subrogated to all of the rights of the *Insured Person* against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which such amount bears to the value declared and agreed under Section I on the Declaration Page for Part One and Part Two.

**12**    *Cancellation*

*You* may cancel this policy at any time by returning it to *Us* or by notifying *Us* in writing of the date cancellation is to take effect. If *We* elect to cancel this policy for any reason permitted by law *We* will notify *You* by giving forty five (45) days written notice. Notice will be mailed to *You* at the address shown on the Declaration Page. Proof of mailing shall be sufficient proof of notice.

When this policy is canceled the premium for the period from the date of cancellation to the expiration date will be refunded. When *You* request cancellation, the return premium will be based on pro rata daily rate. When *We* cancel, the return premium will be pro rata daily rate. If the return premium is not refunded with the notice of cancellation or when this policy is returned to *Us*, *We* will refund it within a reasonable time after the date cancellation takes effect.

1 October 2002                                                                                   10

6      *Our right to recover*

If *We* make payment under this policy and the person on whose behalf payment is made has a right to recover damages from another, that rights shall pass on to *Us*. That person must assist *Us* in making recovery of the amount of *Our* payment. If *We* make payment under this policy and the person on whose behalf payment is made also recovers from others, that person shall hold that payment in trust for *Us* and shall reimburse *Us* to the extent of *Our* payment.

7      *Other insurance*

If at the time of loss there is available any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over all other insurance

8      *Non-waiver*

No action on *Our* part after a loss to recover or save the *Insured Property* from further loss nor any action which *We* may take in connection with the investigation of any loss shall be considered as a waiver of any of *Our* rights under this policy.

9      *Payment of Loss*

Subject to the terms and provisions hereof *We* will pay losses within thirty (30) days from the date *We* reach an agreement with the *Insured Person;* or a final judgment, after appeal if any, is entered in a Court of Law; or an appraisal award is filed with *Us*.

10     *Bankruptcy*

Bankruptcy of any *Insured Person* does not relieve *Us* of any of *Our* obligations under this policy. If *We* make payment properly under this provision, *Our* liability shall be reduced to the same extent as if payment were made directly to the *Insured Person*.

11     *Insurance reduced*

Any loss that *We* may per occurrence or event will not reduce the amount of insurance or the limit of liability of the Section of this policy under which the loss was paid with respect to any subsequent occurrences or events.

12     *Legal action against Us*

An *Insured Person* may not take legal action against *Us*  unless all terms of this policy have been complied with. Also action must be started within one year from the date of *accident* causing loss or damage to the *Insured Property*.

If the above time limitations are invalid under the law applicable to this policy of insurance, legal action must then be commenced within the shortest time limitation permitted by law. No one has the right under this policy to join *Us* as a party in any suit that arises out of the alleged liability of an *Insured Person*.

1 October 2002

9

### SECTION G  CONDITIONS IN THE EVENT OF LOSS APPLICABLE TO ALL SECTIONS OF THIS POLICY

1   *In the event of any loss, damage or occurrence that is covered by this policy, any person presenting a claim must:*

*Notify Us:*

Give *Us* or *Our* authorized representative who shall have issued this policy immediate notice of any occurrence that may result in a claim under this policy.  Failure to provide such notice may prejudice the insurance coverage's provided by this policy of insurance.  This notice should state:

1  With respect to an *accident*, what, where, when and how;
2  Property concerned including other yachts etc.,
3  If injuries involved, names and addresses of injured parties and all witnesses

Once notice has been given to *Us* or *Our* authorized representative, *You* must ensure that the conventional LETTER of PROTEST is submitted to *Us* or *Our* authorized representative by the Captain PROMPTLY

*Notify the Authorities:*

Give prompt notice to the relevant Police authority and to the Coast Guard or other responsible maritime authority if theft or vandalism is involved.  Give prompt notice to the Coast Guard or other responsible maritime authority if an injury or collision is involved.

2   *Protect and recover*

*You* must take all reasonable steps promptly to protect the *Insured Property* from further loss.  *We* will pay the reasonable expenses incurred by *You* in doing this.

3   *Cooperate with Us*

*You* must cooperate with *Us* in all ways in the investigation, defence and settlement of any loss.  *You* and or any *Insured Person* must permit *Us* to examine any records needed to verify the loss and its amount and submit to examination under oath if *We*  request.

4   *Preserve Our Rights*

*You* must assume no obligation, admit no liability nor incur any expense for which *We* are or may become liable without *Our* written permission except expenses incurred to protect the *Insured Property* from further loss.

5   *Impairment of Recovery*

If the *Insured Person* gives up rights to recover damages from any one who may be liable so as to deny *Us* the benefit of such recovery had *We* made payment of a claim, *We* may consider the policy Null & Void.

1 October 2002

11

### 13   Appraisal

If *We* and the *Insured Person* fail to agree as to the amount of loss, each of *Us* shall, on the written demand of either made within sixty (60) days after receipt of proofs of interest and loss by *Us*, select a competent and disinterested appraiser and an appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen 15 days to agree upon such umpire, then on the request of *Us* or the *Insured Person* such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value of the property at the time of loss and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. *We* and the *Insured Person* shall each pay for their chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. *We* shall not be held to have waived any of *Our* rights by any act relating to appraisal.

### 14   Application of deductibles

*We* will adjust each claim for a covered loss to *Your Insured Property* separately. The amount of each adjusted claim will be automatically reduced by the Deductible Amount shown at the appropriate Section on the Declaration Page except if there is a total loss to *Your Yacht*. *We* will treat each covered loss as a separate claim. *We* will treat any two or more covered losses resulting from the same incident or occurrence as one claim; and in this eventuality where two or more separate deductibles are shown on the Declaration Page *We* will only apply the highest deductible.

1 October 2002

12

## SECTION D  JURISDICTION AND/OR SERVICE OF SUIT APPLICABLE TO ALL SECTIONS OF THIS POLICY

**EITHER**

**A**   *Applicable to a Yacht other than that owned, registered or flagged in the United States of America*

  *English Jurisdiction Clause*

  This insurance shall be subject to the exclusive jurisdiction of the English Courts, except as may be expressly provided herein to the contrary.

**OR**

**B**   *Applicable to a Yacht owned, registered or flagged in the United States of America*

  *Service of Suit Clause USA*

  1   It is agreed that in the event of *Our* failure or the failure of any one of *Us* to pay any amount claimed to be due hereunder, *We* at the request of the *Insured Person*, will submit to the jurisdiction of a court of competent jurisdictions within the United States of America.

  2   Notwithstanding any provisions elsewhere in this insurance relating to jurisdiction, it is agreed that *We* have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of *Our* rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

  3   Subject to *Our* rights set forth above

  a   It is further agreed that the *Insured Person* may serve process upon any senior partner in the firm of :

  Mendes & Mount (Attorneys)
  750 Seventh Avenue
  New York NY 10019-6829

  and that in any suit instituted against any one of *Us* upon this contract *We* will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

  b   The above named are authorized and directed to accept service of process on *Our* behalf in any such suit and/or upon the request of the *Insured Person* to give a written undertaking to the *Insured Person* that they will enter a general appearance upon *Our* behalf in the event such a suit be instituted.

1 October 2002                                                                                    13

   c  The right of the *Insured Person* to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account.  For the purpose of suit as herein provided the words *"Insured Person"* include any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of such mortgagee.

   d  Further, pursuant to any statute of any State, Territory or district of the United States of America which makes provision therefor, *We* hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as *Our* true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the *Insured Person* or any beneficiary arising out of this contract of insurance, and hereby designate the above named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

1 October 2002

# LUXURY WORDING

# PART ONE

# PRIMARY INSURANCE COVER

1 October 2002                                                                    2

Note: the Table of Contents below and its index are for guidance only and do not contain nor
constitute any term of nor conditions of this Insurance Cover

## TABLE OF CONTENTS

| Section 1 | PROPERTY DAMAGE TO THE YACHT | pages | 3/5 |
| | Coverage | page | 3 |
| | Exclusions | page | 3 |
| | Amount of Insurance | page | 3/4 |
| | Equipment on shore | page | 4 |
| | Repairs | page | 4 |
| | Inspecting bottom after grounding | page | 4 |
| | Deductible amount | page | 4 |
| | Salvage charges | page | 4 |
| | Sue and Labour | page | 4 |
| | Commercial towage and assistance | page | 5 |
| Section 2 | LIABILITY | pages | 6/7 |
| | Coverage | page | 6 |
| | Exclusions | page | 6 |
| | Limits of liability | page | 7 |
| Section 3 | UNINSURED OWNER OR OPERATOR | page | 8 |
| | Coverage | page | 8 |
| | Exclusions | page | 8 |
| | Amount of Insurance | page | 8 |
| Section 4 | PERSONAL PROPERTY | page | 9 |
| | What Property is covered | page | 9 |
| | Coverage | page | 9 |
| | Payment for losses | page | 9 |
| | Limit of liability | page | 9 |
| Section 5 | FINE ARTS | page | 10 |
| | What Property is covered | page | 10 |
| | Coverage | page | 10 |
| | Payment for losses | page | 10 |
| | Limit of liability | page | 10 |
| Section 6 | MEDICAL PAYMENTS | pages | 11 12 & 13 |
| | What and who is covered | page | 11 |
| | Coverage | page | 11 |
| | Exclusions | page | 12 |
| | Limits of liability | page | 13 |
| | Proof of loss | page | 13 |
| | Additional requirements | page | 13 |
| | Non-admission of liability | page | 13 |
| Section 7 | Mortgagees Interest | pages | 14 |
| Section 8 | Loss of Charter Hire | page | 15 |
| Section 9 | WAR AND STRIKES RISKS | pages | 16/17 |
| | Coverage | page | 16 |
| | Exclusions | page | 16/17 |
| | Cancellation | page | 17 |
| | Automatic termination and cancellation | page | 17 |
| Section 10 | Crew welfare and Additional Expenses | page | 18 |
| Section 11 | Additional Insured Coverage | page | 18 |

1 October 2002

3

## SECTION 1                    PROPERTY DAMAGE TO THE YACHT

### Coverage

1. *We* will provide coverage against *accidental* direct physical loss or damage to *Your Yacht* except as specifically excluded herein.

2. *We* will provide coverage for *Mechanical Breakdown* or derangement of machinery or motor generators or other electrical machinery and their connections.

3. *We* will provide coverage for the negligent or malicious act of any person, including Masters, Officers, Crew, Pilots, Charterers and/or Repairers. Provided that such Charterers and/or Repairers are not the *Insured Person.*

4. *We* will provide coverage whilst *Your Yacht* is being transported by United Yacht Transport, Dock Express or similar type operators, subject to prior advice being received by underwriters and appropriate additional premium being charge if required.

5. *We* will provide coverage for the cost of replacing or repairing any item having a latent defect that causes damage to *Your Insured Property,* including consequential damage resulting therefrom;

6. *We* will provide coverage for the act of any Governmental Authority or State Authority done for the purpose of saving the *Yacht.*

### Exclusions

5. *We* do not provide *Property Damage* coverage against or resulting damage from:

   a)    Wear and tear, gradual deterioration, weathering, insect, mould, animal or marine life;

   b)    Osmosis, blistering or electrolysis;

   c)    Manufacturers' defects or defects in design;

   d)    Loss or damage caused directly or indirectly by or in consequence of the willful or intentional act or omission of the or an *Insured Person:*

   e)    Failure of the or an *Insured Person* to maintain the *Yacht* in a seaworthy condition.

   f)    Loss of use or Charter Hire.

### Amount of Insurance

6.    This is a valued contract of insurance and the amount specified at Section I on the Declaration Page is the most *We* will pay in the event of a loss to *Your Yacht.*

1 October 2002

4

*We* will pay for a total loss to *Your Yacht* only if:

a)  the *Yacht* is completely lost or destroyed; or

b)  the cost of recovering and/or repairing the *Yacht* is greater than the amount of insurance shown under Section 1 on the Declaration Page.

## Equipment on shore

7.  *We* will provide coverage for all items falling within the definition of the *Yacht* which are removed temporarily from *Your Yacht* for storage on shore.

The amount of insurance on the *Yacht* will be reduced by the amount covered on shore.

## Repairs

8.  *We* will pay for the necessary and reasonable cost to repair *Your Yacht* as a result of any covered damage, with no deduction for depreciation.

The cost of repairs shall be determined by yacht repair yards, equipment repairers or surveyors approved by *Us*.

## Inspecting bottom after grounding

9.  *We* will pay the reasonable cost of inspecting the bottom of the *Yacht* after grounding, even if no damage be found without application of any deductible.

## Deductible amount

10.  *We* will adjust each claim for a covered loss to *Your Yacht* separately. The amount of each adjusted claim will be automatically reduced by the Deductible amount shown at Section I on the Declaration Page except if there is a total loss to *Your Yacht*.

## Salvage charges

11.  *We* will pay for reasonable costs *You* incur or those costs imposed upon *You* arising from a covered loss, in addition to the amount specified at Section I on the Declaration Page.

But in no event will *Our* additional liability hereunder exceed the amount shown at Section I on the Declaration Page. *We* will not apply any deductible under this Section.

## Sue and Labour

12.  *We* will pay for reasonable costs *You* or *Your* servants and agents incur in averting or minimizing a loss, which would be recoverable under this insurance.

Actions or measures taken by *You* or *Us* with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

But in no event will *Our* additional liability hereunder exceed the amount shown at Section I on the Declaration Page *We* will not apply any deductible under this Section.

1 October 2002

## Commercial towing and assistance

13.   *We* will provide additional protection in the event there is an emergency situation where *You* and *Your Yacht* are not in imminent danger.  *We* will reimburse *You* for the reasonable costs *You* incur, not to exceed a total of US$50,000 (Fifty thousand US Dollars) resulting from the following services to *Your Yacht* if help is not available and *You* must obtain commercial assistance:

   a)   towing to the nearest place where necessary repairs can be made;

   b)   delivery of gas, oil, parts or loaned battery (excluding the cost of items themselves) or emergency labour, while away from safe harbour.

*We* will not apply any deductible under this Section.

1 October 2002

6

## SECTION 2          LIABILITY

### Coverage

1.    We will pay all sums which *You* or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of *Your Insured Property* including:

    a)    *Bodily Injury,* Loss of Life;

    b)    *Bodily Injury* to Paid Captain and/or Paid Crew members as well as those sums payable for repatriation, wages, maintenance and cure under Jones Act or general maritime law;

        Coverage under this section also includes the paid captain and paid crew member while acting in their capacity as Paid Captain and Paid Crew member of the insured *Yacht.*

        *We* will defend the Paid Captain and Paid Crew member as Co-Defendants with the Named Insured if necessary, for any suit brought against *You* and/or the Paid Captain and/or Paid Crew member for any liability arising out of the operation and transportation of the insured *Yacht.*

    c)    *Property Damage* (including *"Property Damage"* to another vessel) and damage to the marine environment or pollution to the marine environment for which *You* are liable but in no event will *We* be obligated to pay more than the combined limits stated at Sections I and II on the Declaration Page;

        In addition to the above *We* will also pay any fine or penalty assessed by any government or agency thereof for damage to the marine environment or pollution to the marine environment; *Our* limit of liability hereunder shall be no more than 5% of the amount stated at Section II or US$500,000 including defense costs whichever is the greater.

    d)    Attempted or actual raising, removal or destruction of the wreck of *Your Yacht;*

    e)    Failure to remove or destroy the wreck of *Your Yacht.*

### Exclusions

2.    *We* do not provide Liability Coverage for:

    a)    Any amount awarded to any person under Government, Federal or State Compensation Law or act ,unless stated to the contrary above.

    b)    *Property Damage* or *Bodily Injury* arising out of the movement of the *Yacht* on land except at the point the *Yacht* is hauled out or launched;

    c)    Liability assumed by *You* under any contract or agreement unless specifically endorsed hereon;

    d)    Punitive damages;

1 October 2002

7

e)   Damages due to intentional acts or omissions or the result of gross negligence, wanton misconduct or criminal acts carried out by or with the privity and knowledge of the *or an Insured Person*.

## APPLICABLE ONLY TO YACHTS OPERATING IN US WATERS

## LONGSHOREMEN'S AND HARBOR WORKERS COMPENSATION

*We* agree to insure under this Section for the term of this insurance as stated, liability of the *Insured Person* to reimburse as a result of an accident arising out of ownership, maintenance or use of the *Yacht* the provider of benefits that have been paid pursuant to the terms of the United States Longshoremen's and Harbor Workers' Compensation Act, US Code ( 1946) Title 33, Sections 901-49 or the Workmen's Compensation Law of the State of Florida, Florida Statutes Chapter 440(1935) Title XXXI, and all laws amendatory thereof which may be or become effective while this Section of the policy is in force.

### Limits of liability

3.   Unless stated to the contrary above *We* will pay no more than the amount of insurance shown at Section II on the Declaration Page for all loss, damage or expense resulting from:

a)   Any one *accident* or occurrence,

b)   Any series of *accidents* or occurrences arising out of the same event regardless of the number of covered persons or vessels involved, claims made or vessels and premiums shown on the Declaration Page.

### Deductible amount

4.   *We* will adjust each claim for a covered loss to *Your Yacht* separately. The amount of each adjusted claim will be automatically reduced by the Deductible amount shown at Section 2 on the Declaration Page except if there is a total loss to *Your Yacht*.

1 October 2002                                                        8

## SECTION 3       UNINSURED OWNER OR OPERATOR

### Coverage

1.  *We* will pay for the damages which, because of *Bodily Injury* received aboard *Your Yacht, You* are legally entitled to recover from the *Uninsured Owner* or *Operator* of another vessel.

### Exclusions

2.  *We* do not provide coverage under this Section:

    a)   for claims settled without *Our* written consent;

    b)   if the uninsured vessel is owned by a governmental agency or unit;

    c)   if the uninsured vessel is owned by or furnished for the regular use of *You*, a member of *Your* immediate family, or any person insured by this policy;

    d)   for an *Insured Person* using a vessel without permission;

    e)   when the *Yacht* named in this policy is being bareboat chartered;

    f)   where no evidence of physical contact exists between *Your Yacht* and an unidentified vessel or where no evidence of physical contact exists between *Your Yacht* and an uninsured vessel.

3.  This coverage will not apply directly or indirectly to the benefit of any insurer under any Government, State or Federal Compensation Law or act

4.  Payment made for this coverage to or for an *Insured Person* will reduce the amount that person is entitled to recover from the Liability coverage of this policy.

### Amount of Insurance

5.  *We* will not pay more than US$2,000,000(Two Million US Dollars) for all losses arising from the same event regardless of the number of *Insured Persons*, claims made, or vessels involved in any one accident or series of accidents arising out of the same event.

*We* will not apply any deductible under this Section

i October 2002

14

### SECTION 7   MORTGAGEES' INTEREST

**Coverage**

1.   In consideration of the additional premium stated herein *We* will provide coverage in respect of the interest of the Mortgagee named herein (hereinafter called the Mortgagee) is hereby admitted, and shall not be impaired or invalidated by any act or omission, or neglect of the mortgagor, owner, master, agent or crew of the vessel(s) insured by this policy, or by any failure to comply with any warranty or condition over which the mortgagee has no control or over which the mortgagee has control but has not exercised such control, or by any change in title, ownership, or management of such vessel(s): the interest of the mortgagee being that interest more particularly set forth in the mortgage(s) on such vessel(s) in favor of the mortgagee and the note attached thereto, said mortgagee(s) and note being assignable to *Us* upon demand provided full payment of the interest, as herein set forth, of the mortgagee has first been paid.  The amount of coverage under this endorsement shall be the unpaid principal amount of the mortgage applicable to the yacht described on the Declaration Page and in no event shall *Our* limit of liability exceed that amount.

1 October 2002

15

## SECTION 8    CHARTERERS LIABILITY

Coverage

Loss of Hire Extension

1)   If in consequence of loss or damage to the insured vessel by perils insured under the Hull & Machinery section of the policy occurring during the period of the policy the insured vessel is prevented from earning hire then this policy shall pay the actual loss of hire charges sustained by the insured as a direct result of such loss or damage.

2)   Indemnity is limited to a maximum of 6 consecutive weeks loss of hire, as a result of such loss or damage, excess of the first 14 days that the vessel is unable to be earning hire as a result of any one occurrence and in all during the period of insurance.

3)   Warranted that all periods of loss of hire claimed for have been pre-booked and with deposits paid prior to the date of such loss or damage.

4)   The coverage provided by this endorsement shall be deemed excess over all other valid and collectable insurance.

5)   In all cases where a recovery is obtained such recovery shall be apportioned between the assured and this company as their interest may appear.

Notwithstanding anything herein to the contrary the above excess will be applied in respect each and every claim under this section.

l October 2002

16

## SECTION 9      WAR AND STRIKES RISKS

**Coverage**

1.    *We* will provide coverage against direct physical loss or damage to *Your Insured Property* caused by:

   a)    Any mine, bomb or torpedo not carried on board *Your Yacht;*

   b)    Civil war, revolution, rebellion, insurrection or civil strife arising therefrom;

   c)    Strikes, lockouts, political or labour disturbances, civil commotion, riots, martial law, military or usurped power;

   d)    Malicious acts or vandalism;

   e)    Hostilities or warlike operations (whether there be a declaration of war or not ) caused directly by a hostile act by or against a belligerent power. As used herein "power" includes any authority maintaining naval, military or air forces in association with a power.

   f)    Confiscation or expropriation

   g)    Capture, seizure, arrest, restraint or detainment and the consequences thereof or any attempt thereat.

**Exclusions**

2.    *We* will not provide coverage against loss damage liability or expense arising from

   a)    the outbreak of war (whether there be a declaration of war or not) between any of the following:

United States of America
United Kingdom
France
the Russian Federation
the People's Republic of China

   b)    Requisition either for title or use

3.    *We* will not provide coverage against loss damage liability or expense directly or indirectly caused by or arising from:

   a)    Ionizing radiation's from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

   b)    the radioactive toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

1 October 2002                                                          17

c)  any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

## Cancellation

4.  The above cover is in respect of the risks of war etc., and may be canceled either by *Us* or *You* by giving seven (7) days notice (such cancellation becoming effective on the expiry of seven (7) days from midnight of the day on which notice of cancellation is issued by or to *Us*). *We* agree however to reinstate cover subject to agreement between *Us* and *You* prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or *warranties.*

## Automatic termination and cancellation clause

5.  Whether or not such notice of cancellation has been given cover hereunder in respect of the risks of war, etc., SHALL TERMINATE AUTOMATICALLY:

a)  upon the outbreak of war (whether there be a declaration of war or not) between any of the following:

United States of America
United Kingdom
France
the Russian Federation
the People's Republic of China

b)  in respect of *Your Yacht*, in connection with which cover is granted hereunder, in the event of such *Yacht* being requisitioned either for title or use.

1 October 2002

18

## SECTION 10    CREW WELFARE AND ADDITIONAL EXPENSES

Coverage

*This section only operates following a recoverable claim under Part One Section 1 of this insurance*

*We* will pay subject to prior advice and approval by *Us* the reasonable additional expenses in respect crew in respect of the following:

   a) The necessary hotel and accommodation expenses whilst yacht is under repair
   b) The necessary transportation costs as a direct result of the yacht being under repair
   c) Costs of crew replacement.

Underwriters limit of liability hereunder shall be one (1) per cent of the total sum insured under section one without the application of any deductible.

In the event that the above limit being exhausted during the policy period reinstatement hereunder shall be at an additional premium to be hereafter agreed with Underwriters hereon.

## SECTION 11 ADDITIONAL INSURED COVERAGE

Coverage

This section only operates where it is necessary under the terms of any Mooring/Dockage & Marina agreement to name the Owners, Operators, Local, Governmental and State Authorities as additional insured (s) hereunder.

The above will be automatically added to this insurance, but only as their interest may appear in the vessel described herein and for the liability arising out of the negligence of the insured(s) name within the schedule of insurance to which this section attaches.

It is further understood and agreed the additional named insured(s) are only named herein for the purpose of bodily injury and property damage liability in connection with the insured's ownership, maintenance and operation of the yacht covered by this insurance.

The issuance of this coverage does not waive Underwriters rights of subrogation nor does it increase Underwriters limit of liability as defined under section one or two.

It is further understood and agreed that the coverage afforded above shall only arise out of liability that rests solely with the insured(s).

It is also understood and agreed that in the event of non-renewal or cancellation of this insurance the coverage afforded above will cease automatically without any written notice being given prior to any such non-renewal or cancellation.

1 October 2002

19

# LUXURY WORDING

## PART TWO

## INCREASED VALUE COVER

1 October 2002

20

Note: the Table of Contents below and its Index are for guidance only and do not
contain nor constitute any term of nor conditions of this Insurance Cover

# TABLE OF CONTENTS

| Section 1 | PROPERTY DAMAGE | | |
|---|---|---|---|
| | Coverage | pages | 21 |
| | Exclusions | pages | 21 |
| | Amount of insurance | page | 21/22 |
| | Salvage charges | page | 22 |
| | Sue and labour | page | 22 |
| | | page | 22 |
| Section 2 | EXCESS LIABILITY | | |
| | Coverage | pages | 23/24 |
| | Exclusions | page | 23 |
| | Limits of liability | page | 23/24 |
| | | page | 24 |
| Section 3 | WAR AND STRIKES RISKS | | |
| | Coverage | pages | 25/26 |
| | Exclusions | page | 26 |
| | Cancellation | page | 25/26 |
| | Automatic termination and cancellation | page | 26 |
| | | page | 26 |

## SECTION 4      PERSONAL PROPERTY

*This Section describes Your coverage for Personal Property while it is*
*on board Your Yacht*

**Property Covered**

1.   We will cover clothing, personal effects, credit cards, jewelry, fishing gear and sports equipment which belong to *You* or members of *Your* family coverage hereunder operates from the time *You* or members of *Your* family leaves his/her place of residence and/or occupation, whilst in transit to and from ,on board, or in used in connection with *Your Yacht*, and until return to place of residence and/or occupation in addition *We* will also cover the crew personal effects while these items are on board *Your Yacht* or are being loaded or unloaded. *We* will not cover money, travelers' checks or any other valuable papers or documents, unless specially agreed by *Us* and separately declared at the appropriate section on the Declaration Page.

**Coverage**

2.   We will cover direct physical loss or damage from any external cause, except for the following:

a)      Wear and tear, gradual deterioration or corrosion;

b)      Changes in temperatures or humidity;

c)      Any mechanical or electrical failure or disturbance, unless it was caused by lightning.

**Payment for losses**

3.   The most *We* will pay for any item of *Personal Property* covered under this Section is the actual cash value of the property. "Actual Cash Value" is the replacement cost of the specific item in similar condition as at the time of the loss.

4.   If a Deductible amount for *Personal Property* is shown on the Declaration Page *We* will subtract this amount from any payment *We* make for a loss covered under this Section for any payment or adjusted claim.

**Limit of liability**

5.   Section IV *We* will not pay more than the amount specified under Section IV for all losses arising from the same event. Each item valued at more than US$10,000 (Ten Thousand Dollars), or US$5,000 (Five Thousand US Dollars) in respect of crew, to be separately declared and agreed by *Us* prior to attachment.

1 October 2002                                                        10

# SECTION 5        FINE ARTS

*This Section describes Your coverage for Fine Arts while on board Your Yacht*

### Property covered

1.    *We* will cover *Fine Arts* which belong to *You* or members of *Your* family, while these items are on board *Your Yacht* or are being loaded or unloaded.

      Subject to a full detailed schedule being provided together with supporting photographs and current valuation for insurance purposes.

### Coverage

2.    *We* will cover direct physical loss or damage from any external cause, except for the following:

      a)    Wear and tear, gradual deterioration or corrosion;

      b)    Changes in temperature or humidity;

      c)    Any mechanical or electrical failure or disturbance, unless it was caused by lightning;

      d)    Theft otherwise than following forcible and violent removal, or following forcible or violent entry.

### Payment for losses

3.    The most *We* will pay for any item of *Fine Art* covered under this Section is the agreed sum insured shown on the Declaration Page at Section V.

4.    If a Deductible amount for *Fine Arts* is shown at Section V on the Declaration Page *We* will subtract this amount from any payment.

### Limit of liability

5.    Unless stated to the contrary under Section V *We* will not pay more than US$25,000 (Twenty five thousand US Dollars) per item or US$200,000 (Two hundred thousand US Dollars) for all losses arising from the same event

( October 2002                                                                          11

# SECTION 6   MEDICAL PAYMENTS

## *This Insurance is provided only if there is Insurance under Part One, Section II- Liability Insurance*

### Coverage

1.  a)  *We* will pay necessary reasonable medical, surgical, and repatriation expenses. These expenses must be incurred by or for any person including *You* accidentally sustaining *Bodily Injury* or death while on the *Yacht*, or boarding or leaving the *Yacht* or engaged in watersport activity except as specifically or generically excluded or extended hereunder.

    This includes ambulance, hospital and professional nursing services and repatriation expenses. These expenses must start to be incurred within seven (7) days of the accident and be continuous.

    b)  *We* will cover the expenses itemized above in addition to illness incurred by or for the paid Captain and crew, age limit sixty five (65) years, unless otherwise agreed, up to the amount insured, while in *Your* employment and signed onto the *Yacht*, ashore and afloat (coverage hereunder 24 hours per day 365 days per year unless a leap year when 366 days will apply).

    For the purposes of this insurance illness means an illness which first becomes apparent during the period shown in the schedule and which results in the temporary total disablement or permanent total disablement of the insured person.

### Exclusions

2.  This coverage shall not apply

    a)  to the *Bodily Injury* or death of any person;

        i)   to whom benefits are payable under any Government, State or Federal Compensation Law or Legislative Act;

        ii)  who, in being in or upon or in boarding or leaving the *Yacht* is a trespasser or unlawful visitor;

    b)  to liability assumed by the Insured Person under any contract or agreement unless specifically endorsed hereon;

1 October 2002

12

c)    when the *Insured Person* is a corporation, to officers or directors of said corporation and such persons are excluded from coverage under this Section of the policy.

d)    *You*, a *Guest* or a *Crew Members* suicide or attempted suicide or intentional self-injury;

e)    *You*, a *Guest* or a *Crew Members* Human Immune Deficiency Virus, Acquired Immune Deficiency Syndrome Aids) or Aids Related Complex (ARC) howsoever this syndrome has been acquired or may be named or sexually transmitted disease;

f)    *You*, a *Guest* or a *Crew Members* having any emotional or psychiatric problems,but not limited to neurotic disorders such as anxiety, phobias, depression, dissociative disorders, and obsessive compulsive disorders, psychotic disorders such as schizophrenia, paranoid psychosis and effective disorders, and personality disorders such as sociopathic personality;

g)    deliberate exposure to exceptional danger (except in an attempt to save human life), or *Your*, a *Guest* or a *Crew Members* own criminal act.

h)    *You*, a *Guest* or a *Crew Members* being under the influence of alcohol or drugs.

i)    *You*, a *Guest* or a *Crew Members* Medical Expenses incurred as a result of alcoholism, drug addition, allergies or any sexually transmitted disease.

j)    *You*, a *Guest* or a *Crew Members* Rest cures, sanatorial care, or periods of quarantine or isolation.

k)    *You*, a *Guest* or a *Crew Members* Cosmetic or plastic surgery, any dental treatment or care unless necessitated by an injury.

l)    *You*, a *Guest* or a *Crew Members* Pregnancy, childbirth, miscarriage.

m)    *You*, a *Guest* or a *Crew Members* any disorder of the reproductive system which is not common to both gender.

n)    *You*, a *Guest* or a *Crew Members* General Health examinations.

o)    *You*, a *Guest* or *Crew Members* preexisting condition or illness

## Limit of liability

3.    Unless stated to the contrary under Section V1 *We* will pay no more than US$ 100,000 (One hundred thousand US Dollars) in respect to any person in any one accident, nor more than US$500,000 (Five Hundred Thousand US Dollars or equivalent thereof) in any one accident involving more than any one person.

## Proof of loss

4.    A written, sworn proof of loss must be filed with *Us* by any person seeking payment by *Us* under the Medical Payments coverage in this Section, or by someone on their behalf. This proof of loss must include:

1 October 2002                                                                          13

   a)      the name and address of each person and organization performing covered services;

   b)      the nature, extent, and dates of these services;

   c)      itemized charges and any sums already paid.

5.     This proof of loss must be filed on the earliest of the following occurrences:

   a)      as soon as reasonably possible after completion of services;

   b)      as soon as reasonably possible after the cost of services being provided equals the amount of *Our* liability under Section VI on the Declaration Page;

   c)      within one year of the date of the *accident*.

## Additional requirements

6.     Each person seeking payment by *Us* under Section VI must:

   a)      submit to physical examination by a physician selected by *Us* when and as often as *We* reasonably require. *We* will pay for the cost of examination;

   b)      provide *Us* with written authorization for release to *Us* of copies of pertinent medical reports and records.

## Admission of liability

7.     Any payment made under this Section is not an admission of liability by *You* or *Us*.

1 October 2002                                                                    21

# SECTION 1 PROPERTY DAMAGE

*This insurance covers only Total Loss (Actual or Compromised or Constructive) of Your Yacht*

In ascertaining whether *Your Yacht* is a Total Loss (as defined above) the amount insured under Part One shall be taken as the repair value.

The settlement for Total Loss under the insurance provided by Part One shall be accepted as proof of the Total Loss of *Your Yacht* under this Part Two, and in the event of a claim for Total Loss being settled under Part One as an actual or compromised or constructive Total Loss the amount payable hereunder shall be the same percentage of the amount hereby insured as the percentage paid on the amount insured under Part One.

## Coverage

1.   *We* will provide coverage against *accidental* direct physical loss or damage to *Your Yacht* except as specifically excluded herein.

2.   *We* will provide coverage for *Mechanical Breakdown* or derangement of machinery or motor generators or other electrical machinery and their connections.

3.   *We* will provide coverage for the negligent or malicious act of any person, including Masters, Officers, Crew, Pilots, Charterers and/or Repairers. Provided that such Charterers and/or Repairers are not the *Insured Person.*

4.   *We* will provide coverage whilst *Your Yacht* is being transported by United Yacht Transport, Dock Express or similar type operators, subject to prior advice being received by underwriters and appropriate additional premium being charge if required.

5.   The cost of replacing or repairing any item having a latent defect that causes damage to *Your Insured Property,* including consequential damage resulting therefrom;

6.   *We* will provide coverage for the act of any Governmental Authority or State Authority done for the purpose of saving the *Yacht.*

## Exclusions

7.   *We* do not provide *Property Damage* coverage against or resulting damage from:

   a)   Wear and tear, gradual deterioration, weathering, insect, mould, animal or marine life;

   b)   Osmosis, blistering or electrolysis;

1 October 2002                                                      22

    c)      Manufacturers' defects or defects in design;

    d)      Loss or damage caused directly or indirectly by or in consequence of the willful or intentional act or omission of the or an *Insured Person:*

    e)      Failure of the or an *Insured Person* to maintain the *Yacht* in a seaworthy condition.

    f)      Loss of Use or Charter Hire.

**Amount of Insurance**

5.    The amount specified at Section 1 on the Declaration Page for Part Two is the most *We* will pay in the event of a Total Loss (Actual or Compromised or Constructive) of *Your Yacht.*

**Salvage charges**

6.    Salvage and Salvage charges not recoverable in full under the insurance provided by Part One by reason of the difference between the insured value of *Your Yacht* as stated therein (or any reduced value arising from the deduction therefrom in process of adjustment of any claim which law or practice or the terms of Part One may have required) and the value of the *Yacht* adopted for the purpose of contribution to Salvage or Salvage charges; and the liability under this Part Two being for such proportion of the amount not recoverable as the amount insured hereunder bears to the said difference or to the total sum insured against excess liabilities if it exceeds such difference.

    *We* will pay the above in addition to the amount specified at Section 1 on the Declaration Page for Part Two. But, in no event will *Our* additional liability hereunder exceed the amount shown at Section 1 on the Declaration Page for Part Two

**Sue and Labour**

7.    Sue and Labour charges not recoverable in full under the insurance provided by Part One by reason of the difference between the insured value of *Your Yacht* as stated therein (or any reduced value arising from the deduction therefrom of any claim which the terms of the insurance provided by Part One may have required) and the value of the *Yacht* adopted for the purpose of ascertaining the amount recoverable under the insurance provided by Part One), the liability under this policy being for such proportion of the amount not recoverable as the amount insured hereunder bears to the said difference or to the total sum insured against excess liabilities if it exceeds such difference.

    *We* will pay the above in addition to the amount specified at Section 1 on the Declaration Page for Part Two. But, in no event will *Our* additional liability hereunder exceed the amount shown at Section 1 on the Declaration Page for Part Two.

October 1 2002                                                                                          23

## SECTION 2        EXCESS LIABILITY

### Coverage

1.  This insurance covers all sums which are not fully recoverable under Part One which **You** or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of **Your Yacht** because of:

    a) **Bodily Injury, Loss of Life;**

    b) **Bodily Injury** to Paid Captain and/or Paid Crew members as well as those sums payable for repatriation, wages, maintenance and cure under Jones Act or general maritime law;

    Coverage under this section also includes the paid captain and paid crew member while acting in their capacity as Paid Captain and Paid Crew member of the Insured **Yacht.**

    We will defend the Paid Captain and Paid Crew member as Co-Defendants with the Named Insured if necessary, for any suit brought against **You** and/or the Paid Captain and/or Paid Crew member for any liability arising out of the operation and transportation of the Insured **Yacht.**

    c) **Property Damage** (including **"Property Damage"** to another vessel) and damage to the marine environment or pollution to the marina environment for which **You** are liable but in no event will **We** be obligated to pay more than the combined limits stated in Sections I and Section II on the Declaration Page;

    d) Attempted or actual raising, removal or destruction of the wreck of **Your Yacht;**

    e) Failure to remove or destroy the wreck of **Your Yacht.**

### Exclusions

2.  Cover under this Part Two is not provided for any loss or damage of or to any category falling within the defined description of the **Yacht,** other than the named vessel, tender(s) and/or speedboat(s), wet bikes, jet-skis, sailing craft and windsurfers.

3.  **We do not provide Liability Coverage for:**

    a)  Any amount awarded to any person under Government, Federal or State Compensation Law or Legislative act,

1 October 2002

24

b) *Property Damage or Bodily Injury* arising out of the movement of the *Yacht* on land except at the point the *Yacht is hauled* out or launched;

c) Liability assumed by *You* under any contract or agreement unless specifically endorsed hereon;

d) Punitive damages;

e) Damages due to intentional acts or omissions or the result of gross negligence, wanton misconduct or criminal acts carried out by or with the privity and knowledge of the or an *Insured Person.*

## Limits of Liability

4. Unless stated to the contrary above *We* will pay no more than the amount of insurance shown at Section 2 on the Declaration Page for Part Two for all loss, damage or expense resulting from:

a) Any one *accident* or occurrence;

b) Any series of *accidents* or occurrences arising out of the same event regardless of the number of covered persons or vessels involved.

1 October 2002

25

# SECTION 3     WAR AND STRIKES RISKS

**Coverage**

1.  This insurance covers sums which are not recoverable under Part One against physical loss or damage to *Your Yacht* caused by:

    a)  Any mine, bomb or torpedo not carried on board *Your Yacht;*

    b)  Civil war, revolution, rebellion, insurrection or civil strife arising therefrom;

    c)  Strikes, lockouts, political or labour disturbances, civil commotion's, riots, martial law, military or usurped power,

    d)  Malicious acts or vandalism;

    e)  Hostilities or warlike operations (whether there be a declaration of war or not ) caused directly by a hostile act by or against a belligerent power. As used herein "power" includes any authority maintaining naval, military or air forces in association with a power.

    f)  Confiscation or expropriation;

    g)  Capture, seizure, arrest, restraint or detainment and the consequences thereof or any attempt thereof.

**Exclusions**

2.  Cover under this Part Two is not provided for any loss or damage of or to any category falling within the defined description of the *Yacht*, other than the named vessel. Cover is therefore excluded in respect of the tender(s) and or speedboat(s), wet bikes, jet-skis, sailing craft and windsurfers.

3.  *We* will not provide coverage against:

    a)  loss damage liability or expense arising from:

        I)   the outbreak of war (whether there be a declaration of war or not) between any of the following:

             United States of America
             United Kingdom
             France
             the Russian Federation
             the People's Republic of China

        II)  Requisition either for title or use.

1 October 2002

26

    b)    Loss damage liability or expense directly or indirectly caused by or arising from:

            i)    Ionizing radiation's from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

            ii)    the radioactive toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

            iii)    any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

## Cancellation

4.    The above cover is in respect of the risks of war etc., and may be canceled either by *Us* or *You* by giving seven (7) days notice (such cancellation becoming effective on the expiry of seven (7) days from midnight of the day on which notice of cancellation is issued by or to *Us*). *We* agree, however, to reinstate cover subject to agreement between *Us* and *You* prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or *warranties.*

## Automatic termination and cancellation clause

5.    Whether or not such notice of cancellation has been given cover hereunder, in respect of the risks of war etc., shall TERMINATE AUTOMATICALLY:

    a)    upon the outbreak of war (whether there be a declaration of war or not) between any of the following:

        United States of America
        United Kingdom
        France
        the Russian Federation
        the People's Republic of China

    b)    in respect of *Your Yacht,* in connection with which cover is granted hereunder, in the event of such *Yacht* being requisitioned either for title or use.

10/11/03

## INSTITUTE CYBER ATTACK EXCLUSION CLAUSE

1.1     Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2     Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

CL 380

10/11/2003

INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-
CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE.

This clause shall be paramount and shall override anything contained in this insurance
inconsistent therewith

1.     In no case shall this insurance cover loss damage liability or expense directly or
       indirectly caused by or contributed to by or arising from

       1.1     ionising radiation's from or contamination by radioactivity from any nuclear
               fuel or
               from any nuclear waste or from the combustion of nuclear fuel

       1.2     the radioactive, toxic, explosive or other hazardous or contaminating
               properties of any nuclear installation, reactor or other nuclear assembly or
               nuclear component thereof

       1.3     any weapon or device employing atomic or nuclear fission and/or fusion or
               other like reaction or radioactive force or matter.

       1.4     the radioactive, toxic, explosive or other hazardous or contaminating
               properties of any radioactive matter. The exclusion in this sub-clause does
               not extend to radioactive isotopes, other than nuclear fuel, when such
               isotopes are being prepared, carried, stored or used for commercial,
               agricultural, medical, scientific or other similar peaceful purposes

       1.5     any chemical, biological, bio-chemical, or electromagnetic weapon.

CL 370

## U.S.A. & CANADA ENDORSEMENT FOR THE
## INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL,
## BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE
## 10/11/03

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause 10/11/03 (RACCBE).  The inclusion of RACCBE in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory.  Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

USCAN B
29/01/04

INSURANCE COMPANIES (THIRD INSURANCE DIRECTIVES) REGULATIONS 1994

(a) Choice of Law

We the insurer and you the insured are entitled to choose the law applying to the insurance contract.

We propose that the following law shall apply to the insurance contract:

1. the law applying to that part of the UK, Channel Islands or Isle of Man in which you or (if applicable) the first named policyholder lives; or
2. in the case of a business the law applying to that part of the UK, Channel Islands or Isle of Man where it has its principal place of business; or
3. failing the application of either of the above, the law of England and Wales.

In the absence of any written agreement to the contrary, the law proposed by us shall apply.

CUSTOMER CARE

Marsh Ltd, as well as being independent intermediaries, make arrangements with a number of insurers to provide insurance schemes to facilitate the placement of our clients requirements. The insurers provide Marsh with the authority to bind the insurers under these schemes and to undertake administration on their behalf.

Marsh and the insurer named on your policy schedule aim to provide a first class standard of service. If you have any cause for complaint, you should, in the first instance, contact the branch of Marsh that issued your policy. Marsh is committed to handling all complaints promptly, fairly and consistently, and at a suitably senior level.

Please quote the details of your policy (your surname and initials, policy number, departmental reference etc). Marsh, and/or the insurer named on your policy schedule will acknowledge your complaint within 5 business days of receipt and endeavour to have completed a review of the issues within 20 business days. If for whatever reason the review is incomplete at this point you will be contacted and informed as to how the review is progressing and when Marsh, and/or the insurer named on your policy schedule anticipate it will be completed.

If the matter is not resolved to your satisfaction, please write to the Chief Operating Officer of the Marsh branch concerned.

If you are still not satisfied with the action taken please write to:

The UK General Manager
Marsh Private Clients
Garden House
42 Bancroft
Hitchin
Hertfordshire SG5 1DD
Telephone: 01462 428200

Should you remain dissatisfied, the following options are open to you:

a) Ask the Financial Ombudsman to review your case (address below).
b) If your complaint or question relates to a policy underwritten by a Lloyd's syndicate, you may ask the Complaints Department at Lloyd's to review your case (address below).

Addresses and telephone numbers

Financial Ombudsman Service
South Quay Plaza 183 Marsh Wall London E14 9SR
Telephone: 020 7964 1000

Complaints Department
Lloyd's
1 Lime Street,
London EC3M 7HA
Following these procedures will not affect your right to legal action.

Financial Services Compensation Scheme

The insurer named in your policy schedule is covered by the Financial Services Compensation Scheme (FSCS). You may be entitled to compensation from the scheme if the insurer cannot meet their obligations. This depends on the type of business and the circumstances of the claim.
Insurance advising and arranging is covered for 100% of the first £2,000 and 90% of the remainder of the claim, without any upper limit.



## CERTIFICATE SCHEDULE

The Schedule is always subject to the wording of the Master Policy numbered below, a copy of such Master Policy being retained in the offices detailed on the front of this Certificate.

POLICY NO:    05YP0525                    CERTIFICATE NO: 11901180

TYPE:         Liability                   FORM:  MAR 91

AGENT:        Atlass Insurance Group
              1300 SE 17th Street
              Suite 220
              Ft Lauderdale
              Fl 33316        License No A009590

STATE:        Non US

ASSURED:      Tenacious Ltd (BVI Corp)
              C/o Winchester Trust FTRR&1
              Hamilton
              Bermuda

LOSS PAYEE:   None advised

YACHT:        'Tenacious' 1994 Trident Cutter 115' 2 x Lugger 425hp each 2 knots

CREW NO:      5 Full Time and 1 Part Time

MOORING:      Hamilton , Bermuda - Assured's residence

FLAGGED:      BVI

PERIOD:       Twelve Calendar Months commencing 7th September 2006 to 6th September 2007 both
              days inclusive beginning and ending with Local Standard Time at address of Assured.

USE:          Private pleasure &/or occasional Skipper charter &/or corporate entertaining use only.

CRUISING:     Inland and coastal waters of East Coast and Gulf Coast US Florida and Bahamas
              and East Caribbean including all navigable waters therein excluding Cuba , Haiti
              and Colombia or held covered at a premium to be hereafter arranged.

              Warranted not South of Tropic of Cancer between 1st June and 30th November

INTEREST:     EXCESS PROTECTION AND INDEMNITY AND RUNNING DOWN
              CLAUSE LIABILITIES

SUM INSURED:  Liability hereunder limited to USD5,000,000 each and every
              accident excess of USD5,000,000 each and every accident

**CONDITIONS:**

Subject to all Terms, Conditions and Limitations as Contained in the Primary Luxury Yacht Wording (1st October 2002) Part Three Sections 1 and 2 and to follow primary Hull and Increase value placement in all respects including settlements of same.

Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause (10/11/03) CL.370.

Institute Cyber Attack Exclusion Clause (10/11/03) CL.380.

**Brokers Cancellation Clause.**

If payment of premiums or any instalment thereof is not made by the Assured on the date agreed, this policy may be cancelled by the Assurer giving to the Assured named herein ten days' notice of such cancellation. A written and/or telegraphic notice by or through the Brokers, or their Correspondents who negotiated the insurance, to said Assured at his last known address shall constitute a complete notice as required under this clause. Such cancellation shall be without prejudice to premiums earned and due for the period the policy is in force, and to any losses pending on the date of cancellation; however, in the event of a total or constructive total loss of the subject matter of this insurance occurring prior to cancellation, the full annual premium shall be deemed earned.

War Risks subject to 7 days notice of cancellation and also subject to current JWC Hull War, Strikes, Terrorism and Related Perils Listed Areas and including JW2005/001A and JW2005/001B, both dated 20 June 2005.

Excluding liability arising out of acts of terrorism.

LMA5052/LMA5053 in respect of TRIA whichever applicable.

NMA 2969A 25/11/04 - in respect of TRIA where applicable

Lloyd's Privacy Policy Statement (LSW 1135B).

Service of Suit (USA) B Reg. No 509CTB00371.

**NBW PREMIUM:**

USD 4,250.00

**CHOICE OF LAW AND JURISDICTION:**

This policy shall be governed by and construed in accordance with the law of the particular state of the United States of America and each Party agrees to submit to the exclusive jurisdiction of the courts of the United States of America.

**Security:**

| | | | |
|---|---|---|---|
| 25 % | 1607 | JHA | 05MR57A02695 |
| 25 % | 1036 | COF | L4319N05CN |
| 25 % | 4472 | LIB | 551034010STI |
| 25 % | 2001 | AML | LYY0445105EA |
| 100 % | | | |

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of Underwriters hereon or any of them to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent Jurisdiction within the United States and will comply with all requirements to give such Court Jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed the service of process in such suit may be made upon Messrs. Mendes and Mount, 750 Seventh Avenue, New York, NY 10019 - 6829, U.S.A., and that in any suit instituted against any one of them upon this policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Mendes and Mount are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon Underwriters behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any State, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in Office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this policy, and hereby designate Mendes and Mount as the firm to whom the said officer is authorised to mail such process or a true copy thereof.

509CYB00371


10/11/2003

INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, CIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE.

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.      In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

　　　1.1      ionising radiation's from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

　　　1.2      the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

　　　1.3      any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

　　　1.4      the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

　　　1.5      any chemical, biological, bio-chemical, or electromagnetic weapon.

CL370

## U.S.A. & CANADA ENDORSEMENT FOR THE

## INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL,

## BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

## 10/11/03

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause 10/11/03 (RACCBB). The inclusion of RACCBB in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBB as permitted by law.

In the event that any portion of RACCBB may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory. Further, any such finding shall not alter the enforceability of RACCBB under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

USCAN B
29/01/04

10/11/03

INSTITUTE CYBER ATTACK EXCLUSION CLAUSE

1.1    Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2    Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

CL 380

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

## BROKERS CANCELLATION CLAUSE

If payment of premium or any instalment thereof is not made by the Assured on the date agreed, this policy may be cancelled by the Assurer giving to the Assured named herein ten days' notice of such cancellation. A written and/or telegraphic notice by or through the Brokers, or their Correspondents who negotiated the insurance, to said Assured at his last known address shall constitute a complete notice as required under this clause. Such cancellation shall be without prejudice to premiums earned and due for the period the policy is in force, and to any losses pending on the date of cancellation; however, in the event of a total or constructive total loss of the subject matter of this insurance occurring prior to cancellation, the full annual premium shall be deemed earned.

## LLOYD'S PRIVACY POLICY STATEMENT

### UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

### RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

You have a right to request access to or correction of your personal information that is in our possession.